1

**BRADLEY/GROMBACHER LLP**
Marcus J. Bradley, Esq. (SBN 174156)

2
Kiley L. Grombacher, Esq. (SBN 245960)

3
2815 Townsgate Road, Suite 130
Westlake Village, CA  91361

4
Telephone:       (805) 270-7100
Facsimile:        (805) 270-7589

5
mbradley@bradleygrombacher.com
kgrombacher@bradleygrombacher.com

6

**SETAREH LAW GROUP**

7
Shaun Setareh, Esq. (SBN 204514)
9454 Wilshire Boulevard, Suite 711

8
Beverly Hills, California   9022
Telephone:       (310) 888-7771

9
Facsimile:        (310) 888-0109
shaun@setarehlaw.com

10

Attorneys for Plaintiff Kimberly Roberts,

11
Carneisha Forney and Laurie Mullen

12
*(Additional Plaintiffs' Counsel on next page)*

13

## UNITED STATES DISTRICT COURT

14

15

## NORTHERN DISTRICT OF CALIFORNIA

16

| | |
|---|---|
| KIMBERLY ROBERTS, CARNEISHA FORNEY, and LAURIE MULLEN, on behalf of themselves, and all others similarly situated, and the general public, | Case No. 3:13-cv-04731-MEJ |
| | **CLASS ACTION** |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | **DATE:    March 16, 2017**<br>**TIME:      10:00 A.M.**<br>**DEPT.:    "B – 15TH Floor "** |
| TJ MAXX OF CA, LLC, a Delaware limited liability company; MARSHALLS OF CA, LLC, a Delaware limited liability company; HOMEGOODS, INC., a Delaware corporation; and DOES 1-10, inclusive, | **[Filed concurrently with the Declarations of Kimberly Roberts, Carneisha Forney, Laurie Mullen, Marcus J. Bradley, Shawn Setareh, Samuel A. Wong, Scott B. Cooper, and Robert R. Carter; Proposed Order]** |
| Defendants. | |

17

18

19

20

21

22

23

24

25

26

27

28

1

***Additional Plaintiffs Counsel:***

2

AEGIS LAW FIRM, PC
Samuel A. Wong, Esq. (SBN 217104)

3

Kashif Haque, Esq. (SBN 218672)
9811 Irvine Center Drive, Suite 100

4

Irvine, California  92618
Telephone:     (949) 379-6250

5

Facsimile:     (949) 379-6251

6

swong@aegislawfirm.com

7

khaque@aegislawfirm.com

8

THE COOPER LAW FIRM, P.C.
Scott B. Cooper, Esq. (SBN 174520)

9

Samantha Smith, Esq. (SBN 233331)
4000 Barranca Parkway, Suite 250

10

Irvine, California  92604
Telephone:     (949) 724-9200

11

Facsimile:     (949) 724-9255

12

scott@cooper-firm.com

13

samantha@cooper-firm.com

14

THE CARTER LAW FIRM
Roger R. Carter, Esq. (SBN 140196)

15

2030 Main Street, Suite 1300

16

Irvine, California  92614
Telephone:     (949) 260-4737

17

Facsimile:     (949) 260-4754
roger@carterlawfirm.net

18

19

Attorneys for Plaintiffs Carneisha Forney
and Laurie Mullen

20

21

22

23

24

25

26

27

28

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................4

I.       INTRODUCTION ........................................................................................4

II.     SUMMARY OF THE LITIGATION. ..........................................................5

    A. Plaintiffs' Claims and Litigation Risk at the Time of Filing . ..............................5

       1. Failure to Pay for all hours worked / overtime claims ....................................5

       2. Failure to provide compliant wage statements..................................................6

       3. Failure to provide compliant meal and rest breaks ..........................................6

       4. Waiting Time Claims ......................................................................................6

       5. California Labor Code § 203, California Business
          & Professions Code § 17200, and Private Attorney
          General Act Claims .......................................................................................7

    B.  Litigation History . ..................................................................................8

       1.  Procedural Background....................................................................................8

       2.  Significant Discovery & Investigation...........................................................10

       3.  Mediation .....................................................................................................10

III.    KEY TERMS OF THE PROPOSED SETTLEMENT. ...........................................11

IV.    CLASS CERTIFICATION IS APPROPRIATE FOR

       SETTLEMENT PURPOSES ............................................................................14

    A. The element of Federal Rules of Civil Procedure

       Rule 23(a) are satisfied..................................................................................14

       1. Rule 23(a)(1): Numerosity ...........................................................................14

i

2. Federal Rules of Civil Procedure, Rule 23(a)(2):

Commonality..............................................................................15

3. Federal Rules of Civil Procedure, Rule 23(a)(3):

Typicality ..................................................................................15

4. Federal Rules of Civil Procedure, Rule 23(a)(4):

Adequacy of Representation .....................................................16

B. The Element of Federal Rules of Civil Procedure

Rule 23(b) are Satisfied...................................................................16

1. Common Questions Predominate........................................16

2. A Class Action is Superior ..................................................17

V.      OVERVIEW OF THE CLASS ACTION SETTLEMENT

PROCESS .........................................................................................17

VI.     THE SETTLEMENT SHOULD BE PRELIMINARILY

APPROVED.......................................................................................18

A. The Role of Preliminary Approval................................................18

B. The Proposed Settlement Meets the Preliminary

Approval Standards.........................................................................18

1. The Settlement is Entitled to a Presumption of Fairness ..........19

2. The Settlement is Fair Given the Settlement Benefits and

the Risks Associated with Continued Litigation ........................20

3. The Service Awards to the Class Representatives are Fair

and Reasonable...........................................................................23

ii

4. Plaintiffs are entitled Reasonable Attorneys' fees and Costs ...................25

D.  The Court Should Order Dissemination of the Proposed

Class Notice ........................................................................................25

1. The Settlement Agreement Provides for the Best Method

of Notice Practicable Under the Circumstances......................................26

2. The Proposed For of Notice Adequately Informs

Class Members of the Litigation and Their Rights in

Connection  with the Settlement .................................................................26

E.  The Court Should Set a Schedule for Final Approval ....................................27

VII.        CONCLUSION ...........................................................................................28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**

**Federal Cases**

*Amchem Prods. Inc. v. Windsor*
   521 U.S. 591, 623 (1997). .....................................................................16

*Bellinghausen v. Tractor Supply Company*
   2014 WL 465907 at *8-9 (N.D. Cal 2014)................................................7

*Blackwell v. Skywest Airlines, Inc.,*
   245 F.R.D. 453, 467-68 (S.D. Cal. 2007) ...............................................20

*Brown v. Fed. Express Corp.,*
   249 F.R.D. 580, 587-88 (C.D. Cal. 2008) ...............................................22

*Brown v. Hain Celestial Grp., Inc.*
   2016 WL 631880, at *5 (N.D. Cal. Feb. 17, 2016)................................22

*Carter v. Anderson Merchandisers, LP*
   2010 WL 144067, at *4 (C.D. Cal. Jan. 7, 2010)..................................19

*Chun-Hoon v. McKee Foods Corp.*
   716 F. Supp. 2d 848, 850-51 (N.D. Cal. 2010) ....................................19

*Churchill Vill. L.L.C. v. Gen. Elec.,*
   361 F.3d 566, 576 (9th Cir. 2004)........................................................18

*Class Plaintiffs v. City of Seattle*
   955 F.2d 1268, 1276 (9th Cir. 1992)....................................................18

*Eddings v. Health Net, Inc.*
   2013 WL 169895, * 2 (C.D. Cal. Jan. 16, 2013)....................................18

*Fernandez v. Victoria Secret Stores, LLC*
   2008 WL 8150856, at *4 (C.D. Cal. July 21, 2008) ..............................20

iv

*Frlekin v. Apple Inc.*

    N.D. Cal. Case No. C 13-03451 WHA, 2015

    WL 6851424 (N.D. Cal. Nov. 7, 2015) ......................................................................22

*Gaudin v. Saxon Mortgage Servs., Inc.*

    2015 WL 7454183, at *10 (N.D. Cal. Nov. 23, 2015 ................................................24

*Gonzalez v. Officemax N. Am.,*

    *2012 U.S. Dist. LEXIS 163853 (C.D. Cal. Nov. 5, 2012)* ......................................22

*Hain Celestial Grp.*

    2016 WL 631880, at *5. ...........................................................................................20

*Hanlon v. Chrysler Corp.*

    150 F.3d 1011, 1019 (9th Cir. 1998) ......................................................................15

*In re Heritage Bond Litig.*

    2005 WL 1594403, at * 2 (C.D. Cal. June 10, 2005 ..............................................20

*In re Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.,*

    618 F.3d 988, 991 (9th Cir. 2010) ..........................................................................25

*In re Synocor ERISA Litig.,*

    516 F.3d 1095, 1101 (9th Cir. 2008) ......................................................................18

*In re Tableware Antitrust Litig.*

    484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007) ..................................................19

*Jimenez v. Allstate Ins. Co.,*

2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) ........................................22

*Jones v. Spherion Staffing LLC,*

    2011 WL 3264081 at *8-9 (C.D. Cal. 2011)..............................................................7

*Kenny v. Supercuts, Inc.,*

    252 F.R.D. 641, 645 (N.D. Cal. 2008) ...................................................................22

*Lerwill v. Inflight Motion Pictures, Inc.*

    582 F.2d 507, 512 (9th Cir. 1978) ..........................................................................16

v

1

2   *McKenzie v. Fed. Express Corp. (McKenzie I)*

3       765 F. Supp.2d 1222, 1228-1229 (C.D. Cal. 2011)........................................................6

4   *Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.,*

5       221 F.R.D. 523, 527 (C.D. Cal. 2004) ...................................................................20

6   *Officers for Justice v. Civil Serv. Comm'n*

7       688 F.2d 615, 625 (9th Cir. 1982) .........................................................................18

8   *Officers for Justice,*

9       688 F.2d at 625 ...................................................................................................20

10  *Ortega v. J.B. Hunt Transp. Inc.,*

11      258 F.R.D. 361, 374 (C.D. Cal. 2001.) ....................................................................7

12  *Rannis v. Recchia,*

13      380 F. App'x. 646, 650 (9th Cir. 2010) .................................................................26

14  *Rodriguez v. West Publ'g Corp.,*

15      563 F.3d 948, 958-59 (9th Cir. 2009).....................................................................23

16  *Van Brokhorst v. Safeco Corp.,*

17      529 F.2d 943, 950 (9th Cir. 1976) .........................................................................18

18  *Van Vranken v. Atlantic Richfield Co.,*

19      901 F. Supp. 294, 299 (N.D. Cal. 1995)................................................................24

20  *Villalpando v. TJX Direct Inc.,*

21      2016 WL 1598663, at *11-17 (N.D. Cal. Apr. 21, 2016). ......................................17

22  *Weeks v. Kellogg Co.,*

23      2013 WL 6531177, at *10 (C.D. Cal. Nov. 23, 2013) .............................................18

24  *Welling v. Allexy,*

25      155 F.R.D. 654, 656 (N.D. Cal. 1994) ..................................................................15

26  *Wren v. RGIS Inventory Specialists,*

27      256 F.R.D. 180, 210 (N.D. Cal. 2009) ..................................................................17

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATE CASES**

*Amaral v. Cintas Corp.*

    (2008) 153 Cal.App.4th 1157 .................................................................................8

*Brinker v. Superior Court*

    (2012) 53 Cal.4th 1004 ........................................................................................6

*Cortez v. Purolator Air Filtration Prods. Co.,*

    23 Cal.4th 163, 173 (2000.) ................................................................................8

*Davis v. Morris*

    (1940) 37 Cal.App.2d 269 ...................................................................................8

*Kirby v. Immoos Fire Protection*

    (2012) 54 Cal.4th 1244 ........................................................................................7

*Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.*

    (2002) 102 Cal. App. 4th 765, 782 ......................................................................7

*Soto v. Motel 6 Operating, L.P.,*

    4 Cal.App.5th 385, 392, 208 Cal.Rptr.3d 618 (Ct. App. 2016) ..................................21

**FEDERAL STATUTES**

Federal Rules of Civil Procedure, Rule 23(a) ...........................................................14, 15

Federal Rules of Civil Procedure, Rule 23(a)(1) ......................................................14, 15

Federal Rules of Civil Procedure, Rule 23(a)(2) .............................................................15

Federal Rules of Civil Procedure, Rule 23(a)(3) .......................................................15, 16

Federal Rules of Civil Procedure, Rule 23(a)(4) .............................................................16

Federal Rules of Civil Procedure, Rule 23(b)(3)(A)-(D) ...................................................17

Federal Rules of Civil Procedure, Rule 23(c)(2)(B) .........................................................26

Federal Rules of Civil Procedure, Rule 23(e). ..........................................................19, 26

**STATE STATUTES**

California *Business & Professions Code* § 17200 .................................................5, 7, 8

California *Labor Code* § 203 ................................................................................6, 7, 8

California *Labor Code* § 226 ...........................................................................................6

California *Labor Code* § 226(2), (8), and (9)..................................................................6

California *Labor Code* § 226.7 .......................................................................................7

California *Labor Code* § 226.7(b)...................................................................................6

California *Labor Code* § 2699(e)(2).) ...........................................................................8

California *Labor Code* §§1197.1 and 1199....................................................................5

California *Labor Code* §204 ...........................................................................................5

**REGULATIONS**

Cal. Code Regs. tit. 8 § 13520 .........................................................................................7

**OTHER**

4 Newberg § 11.41 ..........................................................................................................19

Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004) .....................................17

Newberg on Class Actions § 11.25 (4th ed. 2002). ..................................................18, 19

Newberg on Class Actions, § 11.22, et seq. (4th ed. 2002) ...........................................18

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 16, 2017 at 10:00 a.m. in the United States District Court for the Northern District of California, San Francisco Courthouse, Courtroom B-5thFloor, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Elena James, Plaintiffs Kimberly Roberts, Carneisha Forney and Laurie Mullen (collectively "Named Plaintiffs"), will move and hereby does move for preliminary approval of the proposed Class Settlement with Defendants TJ MAXX of CA, LLC, Marshalls of CA, LLC, and Homegoods, Inc. ("TJX" or "Defendants"). Specifically, Plaintiffs seek an order of this Court:

1. Granting preliminary approval of the class action settlement reached between the Parties as set forth in the Parties' Settlement Agreement (the "Settlement Agreement"), which is attached as Exhibit 1 to the Declaration of Marcus J. Bradley, filed concurrently herewith in support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Bradley Decl.");

2. Conditionally certifying the Settlement Classes defined as:

(1) the Monetary Payment Class, comprised of current and former non-exempt employees who worked at a T.J. Maxx, Marshalls or HomeGoods branded retail store in the State of California at any time from October 10, 2009 through and including August 10, 2016; and

(2) the Prospective Relief Class, comprised of all non-exempt employees working at a T.J. Maxx, Marshalls or HomeGoods branded retail store in the State of California at any time from October 10, 2009 through and including August 10, 2016 who will in the future be provided with wage statements substantially in the form of the Wage Statement Exemplar.;

3. Approving the Notice of Settlement of Class Action Litigation (in the form set forth in Exhibit A to the Settlement Agreement);

4. Approving Kimberly Roberts, Carneisha Forney and Laurie Mullen as Class Representatives;

5. Approving Bradley/Grombacher LLP, Setareh Law Group, Aegis Law Firm, PC, the Cooper Law Firm, P.C. and the Carter Law Firm as Class Counsel;

1

6. Approving ILYM Group, Inc. as the Claims Administrator;

7. Approving the establishment of a Qualified Settlement Fund pursuant to Treas. Reg. § 1.468B-1;

8. Scheduling the date for the final approval hearing; and

9. Entering the [Proposed] Order Preliminarily Approving Class Action Settlement Agreement filed herewith.

This motion is unopposed as based on the Settlement Agreement.  This Motion is made on the grounds that:

a. The Settlement Class meets all of the requirements for class certification for purposes of settlement pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

b. The Settlement is fair, adequate and reasonable as required under Rule 23(e) of the Federal Rules of Civil Procedure;

c. Plaintiffs and their counsel are adequate to represent the Settlement Class as required by Rule 23(a)(4) and (g) of the Federal Rules of Civil Procedure;

d. The notice procedures and related forms comport with all relevant due process requirements and the requirements of Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure; and

e. Based on the foregoing, notice should be directed to Settlement Class Members and a final fairness hearing should be scheduled.

The motion will be based on this Notice of Motion and the attached Memorandum of Points and Authorities filed herewith, the Declarations of Kimberly Roberts, Carneisha Forney, Laurie Mullen, Marcus Bradley, Shaun Setareh, Samuel A. Wong, Scott B. Cooper and Roger R. Carter

2

and attached exhibits, the argument of counsel and upon such other material contained in the file and pleadings of this action.

Respectfully submitted,

Dated:  January 31, 2017

,
BRADLEY GROMBACHER, LLP

BY: _____/S/___Marcus J. Bradley_____
MARCUS J. BRADLEY
Attorneys for Plaintiffs,
KIMBERLY ROBERTS,
CARNEISHA FORNEY,
and LAURIE MULLEN

3

## MEMORANDUM OF POINTS AND AUTHORITIES

Named Plaintiffs respectfully submit this memorandum of points and authorities in support of the motion for preliminary approval of settlement of the class action.

### I. INTRODUCTION

Named Plaintiffs and Defendants have reached a full and final settlement of the above-captioned class action, which is embodied in the Settlement Agreement[1] and Release (the "Agreement") filed concurrently with the Court as Exhibit 1 to the Declaration of Marcus J. Bradley ("Bradley Decl."). By this motion, Named Plaintiffs seek preliminary approval of the Agreement as fair, reasonable and adequate, entry of the Preliminary Approval Order, and scheduling of the Final Approval Hearing to determine final approval of the Settlement.

The proposed $8.5 million non-reversionary, class action settlement of this wage and hour case was achieved after nearly three and a half years of hard-fought litigation. This settlement will provide substantial monetary payments to more than 80,000 retail store employees/class members as well as significant injunctive relief.  As set forth more fully below, the proposed settlement satisfies all the criteria for settlement approval under Federal Rule of Civil Procedure 23. The Settlement was reached after extensive investigation, discovery, and motion practice. The negotiations were at arms-length, and were facilitated by two much lauded mediators, Michael Dickstein and Mark Rudy, over the course of two in-person mediation sessions and multiple telephonic and e-mail negotiation sessions supervised over time by these neutrals. Accordingly, Plaintiffs request that the Court preliminarily approve the proposed settlement, certify the proposed settlement class, approve distribution of notice of the proposed settlement, and set a final approval hearing.

---

[1] Capitalized terms in this Memorandum have the same meaning as contained in Section II of the Stipulation.

## II. SUMMARY OF THE LITIGATION

### A. Plaintiffs' Claims and Litigation Risk at the Time of Filing

The claims of this litigation arise from Defendants' alleged failure to implement legally compliant meal and rest period policies, their alleged failure to pay all wages owed due to security checks done at breaks and at the end of shifts, their alleged failure to provide accurate wage statements and their allegedly unlawful policy of forfeiture of vacation pay.  Finally, Plaintiffs have alleged derivative claims under Labor Code section 203, unfair competition pursuant to California *Business & Professions Code* § 17200, et seq. ("UCL") and the Private Attorneys General Act ("PAGA").

#### 1.   Failure to pay for all hours worked / overtime claims

Plaintiffs allege that Defendants failed to pay Plaintiffs and Class Members for all minimum and overtime wages. Plaintiffs allege that Defendants' written policies regarding "closing" procedures are unlawful, which makes the case amenable for class certification. Specifically, Plaintiffs' allege that Defendants procedures ensure that Plaintiffs and Class Members are forced to remain under Defendants control after they are clocked out at the end of the day. Despite being "off-the-clock" Plaintiffs allege that they and Class Members are not permitted to leave for the night until their managers finish certain required tasks (such as setting alarms, locking doors, inspecting the store, and performing bag inspections.) As a result of its practice of paying by schedule, rather than actual time worked, Defendants also violated California *Labor Code* §204 (requiring employers to compensate employees correct and proper regular wages for all regular hours worked on regular paydays), and California *Labor Code* §§1197.1 and 1199 (imposing penalties and fines for failure to pay correct and proper wages for all hours worked).

Defendants contend that Class Members were paid for all hours worked and that any time spent on security checks was *de minimis*. Defendants argue that certification would not be proper because security checks were not performed in the same fashion at all locations. Additionally, Defendants contend that Class Members' regular rate of pay was correctly calculated.

5

### 2. Failure to provide compliant wage statements

Plaintiffs allege that Defendants standardized wage statements fail to comply with California *Labor Code* § 226, as they fail to state: the applicable hourly rates, the total hours worked and the name and address of the employer. For example, each paystub stated five business names "The TJX Companies Inc., TJ-Max, Marshalls, AJWright and HomeGoods," but did not include an address for any of these entities. Plaintiffs additionally have derivative § 226 claims for Defendants' failure to provide meal and rest breaks and their security checks which caused a failure to pay for all hours worked. Thus, Defendants' wages statements violate California *Labor Code* § 226(2), (8), and (9). See *McKenzie v. Fed. Express Corp. (McKenzie I)*, 765 F. Supp.2d 1222, 1228-1229 (C.D. Cal. 2011).

### 3. Failure to provide compliant meal and rest breaks

Plaintiffs allege that Defendants standardized practice of requiring Class Members to wait in line and undergo two off-the-clock security bag searches and clearance checks when they leave for their breaks effectively prevents Class Members from taking full 30-minute meal breaks or 10-minute rest breaks. Defendants failed to pay Plaintiffs and Class Members meal period premiums or rest period premiums for non-compliant meal periods pursuant to California *Labor Code* § 226.7(b) and sections 11-12 of the applicable IWC Wage Order.

In *Brinker v. Superior Court* (2012) 53 Cal.4th 1004, 1040-1041, the California Supreme Court held an employer need only provide its non-exempt employees the opportunity to take rest periods, but is not required to ensure that the employees take them. Brinker, supra, 53 Cal.4th at 1040–1041. Defendants contend that their policies and practices regarding meal and rest periods meet the requirements set forth in Brinker. Defendants argue that they had compliant written meal and rest break policies. Defendants further contend that Plaintiffs and co-workers were provided meal and rest breaks in compliance with California law.

### 4. Waiting Time Claims

California *Labor Code* § 203 authorizes courts to award waiting time penalties only where there is evidence that the employer "willfully" failed to pay an employee's wages. "A willful failure

to pay wages within the meaning of . . . Section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due." Cal. Code Regs. tit. 8 § 13520.  An employer does not act "willfully" within the meaning of Section 203 where the employer has a good faith belief (even if mistaken) that the employee is not owed any wages. *Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.* (2002) 102 Cal. App. 4th 765, 782. Indeed, "a good faith dispute that any wages are due will preclude imposition of waiting time penalties under Section 203."  Cal. Code Regs. tit. 8 § 13520. Defendants contend this is not a case where it willfully withheld wages from Plaintiff or Class Members. Defendants further contend there is no evidence that their defenses in this case are presented in bad faith.

In addition, Defendants contend that meal and rest period violations do not support a derivative waiting time penalty claim under § 203. Some courts have taken the position that after the California Supreme Court's decision in *Kirby v. Immoos Fire Protection* (2012) 54 Cal.4th 1244—which held that California *Labor Code* § 226.7 claims are for the non-provision of *breaks*, rather than for non-payment of wages—an alleged failure to provide rest periods cannot support a claim for penalties under California *Labor Code* § 203, which are both predicated upon a failure to pay "wages." (Compare, *Jones v. Spherion Staffing LLC*, 2011 WL 3264081 at *8-9 (C.D. Cal. 2011) (penalties not available) with *Bellinghausen v. Tractor Supply Company*, 2014 WL 465907 at *8-9 (N.D. Cal 2014) (penalties may be available).)

### 5.   California *Labor Code* § 203,  California Business & Professions Code § 17200, and Private Attorney General Act Claims.

Plaintiffs' claims under California *Labor Code* § 203, the UCL, and PAGA are derivative of the foregoing claims. *E.g., Ortega v. J.B. Hunt Transp. Inc.,* 258 F.R.D. 361, 374 (C.D. Cal. 2001.)

For purposes of the claim for waiting time penalties under section 203, Plaintiffs would establish that there were wages due at the time of termination, namely the improperly forfeited vacation pay, overtime pay and premium pay for missed meal and rest breaks.

7

Additionally, California *Labor Code* § 203 requires that the employer's conduct is willful, i.e., when it has "intentionally failed or refused to perform an act which was required to be done." (*Amaral v. Cintas Corp.* (2008) 153 Cal.App.4th 1157.) Notably, evil motive is not required. (*Davis v. Morris* (1940) 37 Cal.App.2d 269.) Here, Plaintiffs contend that Defendants failed to pay wages as a result of an improper vacation forfeiture policy, failure to provide meal and rest breaks, and forcing Class Members to remain under Defendants' control after they are clocked out at the end of the day. Because Defendants had the ability to comply with the Labor Code and pay wages in accordance therewith, but did not do so, their failure to pay said wages is willful under § 203.

Under California *Business & Professions Code* § 17200 the Class Members have a restitutionary claim for any wages for accrued vacation pay that they were not paid. *Cortez v. Purolator Air Filtration Prods. Co.,* 23 Cal.4th 163, 173 (2000).

No scienter is necessary for recovery of civil penalties under PAGA.  But these penalties are admittedly discretionary and the Court could choose to award a very low amount in PAGA penalties or no amount at all.  (*See* California *Labor Code* § 2699(e)(2).)

**B. Litigation History**

**1. Procedural Background**

On September 17, 2013, Plaintiff Roberts served notice of her intent to bring a PAGA representative action on behalf of herself and similarly situated allegedly aggrieved employees of The TJX Companies, Inc., Marshalls of CA, LLC and HomeGoods, Inc.  Shortly thereafter, on October 10, 2013, Plaintiff Roberts filed a class action complaint against The TJX Companies, Inc., Marshalls of CA, LLC and HomeGoods, Inc., alleging: (1) failure to pay overtime in violation of the Fair Labor Standards Act; (2) failure to pay overtime in violation of California law; (3) failure to pay vacation wages at termination[2]; (4) failure to provide accurate, itemized wage statements; (5) failure to timely pay final wages; and (6) unfair competition.  On March 7, 2014, Plaintiff Roberts

---

[2] While Plaintiffs pled such claims with a good faith belief in their veracity, in the course of discovery it was discovered that the claim lacked evidentiary support.

amended the complaint to identify T.J. Maxx of CA, LLC as a defendant and to remove The TJX Companies, Inc. as a defendant.  On March 4, 2015, Plaintiff Roberts amended the complaint a second time to dismiss her cause of action for failure to pay overtime in violation of the Fair Labor Standards Act and to assert new claims for: (1) failure to pay minimum wages for all hours worked in violation of California law; (2) failure to provide meal periods; (3) failure to provide rest breaks; and (4) PAGA penalties.  At this time, Plaintiff Roberts also added Carneisha Forney and Laurie Mullen as named plaintiffs, which effectuated the consolidation of the Roberts action with an overlapping state court action, *Carneisha Forney v. The TJX Companies, In*c. (Orange County Superior Court Case No. 30-2014-00705828-CU-OE-CXC) filed on February 14, 2014.

Following the filing of the Second Amended Complaint in Roberts, the Forney action was dismissed on March 5, 2015.  (For her part, Plaintiff Forney served notice of her intent to bring a PAGA representative action on behalf of herself and similarly situated allegedly aggrieved employees of The TJX Companies, Inc. on February 11, 2014, while Plaintiff Mullen did so with respect to T.J. Maxx of CA, LLC, Marshalls of CA, LLC and HomeGoods, Inc. on May 19, 2015.)

Plaintiffs were employed by Defendants as non-exempt employees.  Accordingly, Plaintiffs seek to represent two classes:

(1) the Monetary Payment Class, comprised of current and former non-exempt employees who worked at a T.J. Maxx, Marshalls or HomeGoods branded retail store in the State of California at any time from October 10, 2009 through and including August 10, 2016; and

(2) the Prospective Relief Class, comprised of all non-exempt employees working at a T.J. Maxx, Marshalls or HomeGoods branded retail store in the State of California at any time from October 10, 2009 through and including August 10, 2016 who will in the future be provided with wage statements substantially in the form of the Wage Statement Exemplar.

The settlement class definitions differ from the definitions in the operative complaint.

9

**2. Significant Discovery & Investigation**

The Parties have diligently engaged in both formal and informal discovery to investigate the Claims alleged in this Action. Specifically, Plaintiffs issued initial disclosures on January 20, 2014, while Defendants issued initial disclosures on January 17, 2014 and supplemental disclosures on October 1, 2015. Plaintiffs then issued three sets of requests for the production of documents and two sets of special interrogatories to each of the Defendants, to which Defendants fully responded. Similarly, Defendants issued requests for the production of documents to Plaintiffs, to which Plaintiffs likewise responded. In total, the parties exchanged over 2,300 pages of documents related to Plaintiffs' allegations.

A number of depositions were also taken, including the depositions of Plaintiff Roberts (two-day deposition), Plaintiff Forney (full-day deposition), Plaintiff Mullen (full-day deposition) and six depositions of Defendants' persons most knowledgeable regarding Defendants' relevant policies and procedures, including Defendants' timekeeping systems, policies and procedures; meal and rest break policies and procedures; payroll systems, policies and procedures; and store operations, including opening and closing and bag check policies and procedures four of which were conducted in Boston, Massachusetts.

Finally, for purposes of mediation, Defendants informally produced wage statement samples, average pay rates, number of current and former non-exempt retail employees, the number of current non-exempt employees at each retail store and weeks worked information for all non-exempt employees who had worked at a T.J. Maxx, Marshalls or HomeGoods branded store during the relevant time period.

The Parties prepared detailed mediation briefs prior to mediation. Plaintiffs retained an expert to analyze employee time and payroll records.

**3. Mediation**

On April 12, 2016, the Parties attended a full day of mediation with Michael Dickstein, a well-known and experienced wage and hour class action mediator. At this first mediation session, the Parties were unable to come to an agreement to resolve this Action.

However, continued discussions between the Parties culminated in a second full day of mediation on June 12, 2016, this time with the assistance of Mark Rudy, another well-known and experienced wage and hour class action mediator.  At this second day of mediation, the Parties agreed to the material terms of this Settlement.

At all times, each Party was represented by their respective counsel during the arms-length, good-faith negotiations facilitated by Mr. Dickstein and Mr. Rudy. Now that the Agreement has been reduced to writing, the parties submit the same to the Court for preliminary approval.

### III. KEY TERMS OF THE PROPOSED SETTLEMENT

Under the Settlement Agreement, Defendants will pay $8,500,000 to resolve this litigation ("Gross Settlement Fund"). Bradley Decl., Exh. 1 at 1.39 (Settlement Agreement). This amount is all-inclusive. This entire amount will be disbursed pursuant to the terms of the Settlement Agreement, and none of it will revert to Defendants. Id. at Section 3.13.4.

The key terms of the Settlement Agreement include:

• **Settlement Classes:** There will be a direct monetary distribution to all 82,947 proposed members of the Class (provided such Class Members do not submit a timely and valid Request for Exclusion. Class Members will not have to file claims to receive their settlement payments. The proposed settlement class contains 82,947 members and is defined as all current and former non-exempt employees who worked at a T.J. Maxx, Marshalls, or HomeGoods branded retail store in the State of California from October 10, 2009 through and including August 10, 2016. Id. at Sections 1.3, 1.8.

• **Total Settlement Amount:** The Total Settlement Amount is the total sum TJX has agreed to pay in exchange for Plaintiffs' releases and promises contained in the Settlement Agreement. Id. at Section 1.39. This amount is $8.5 million. Id[3].

---

[3] The Total Settlement Amount of $8,500,000 does not include employer-side taxes owed on Individual Settlement Payments, which shall be paid by Defendants in addition to the 8,500,000 Total Settlement Amount. *Section 3.7.*

11

• **No Reversion**: All Net Settlement Funds will be paid out, and none will revert to Defendants. Id. at Section 3.13.4.

• **Injunctive Relief:** Defendants have agreed to modify their wage statements going forward, as soon as practicable, but no later than June 30, 2017.  Attached to the Joint Stipulation as Exhibit E is the proposed revised Wage Statement Exemplar, which shall be presented to the Court for approval.

• **Net Distribution Fund**: The net settlement fund is the amount that remains and that shall be paid to Settlement Class Members, after the following amounts are subtracted: (1) proposed attorneys' fees and costs for Class Counsel ($2,610,000);  (2) Administrative Costs; (3) proposed Class Representative Service Awards ($40,000); (4) the PAGA Settlement, and; (5) anticipated settlement administration costs ($250,000). Id. at Section 1.19[4].  This amount is estimated at Five Million, Five Hundred and Twenty-Five Thousand Dollars ($5,525,000). Id.

• **Distribution Formula**: Each member of the Final Settlement Class who does not submit a valid and timely request for exclusion will be paid based on his or her total actual workweeks worked during the Class Period.  This amount will be determined by the following formula:  First, the Claims Administrator shall reduce the Settlement Amount of $8,500,000 by deducting (a) all attorneys' fees and litigation costs approved by the Court and awarded to Class Counsel, (b) all fees to be paid to the Claims Administrator associated with settlement administration, (c) the service awards to the Plaintiffs approved by the Court and awarded to the Plaintiffs, and (d) payment to the LWDA.  The Individual Settlement Payments for each Settlement Class member will be calculated by dividing the Net Distribution Fund by the total number of weeks worked by Monetary Payment Class Members during the Class Period (rounded up).  Each Monetary Payment Class Member's Individual Settlement Payment will then be determined by multiplying the total number of weeks

---

[4] Any amounts not awarded as attorneys' fees and costs, service award, LWDA award or claims administration expenses will be added to the amount payable to the class.

she worked during the Class Period (rounded up) by the dollar value of each week.  Agreement ¶ 3.13.4.

All checks not cashed within 120 days of issuance will be transmitted by the Settlement Administrator to the State of California Controller's Office, Unclaimed Property Fund, in accordance with California law regarding such escheatment. Agreement ¶ 3.13.3.

Plaintiffs estimate that after attorneys' fees and costs, the average Class Member award will be approximately $60. Bradley Decl. at ¶ 21. However, the actual awards for each Class Member will necessarily be higher for Class Members with more workweeks, and correspondingly lower for Class Members with fewer workweeks.

• **Tax Allocation**: The Settlement provides that settlement awards to Class Members will be allocated as follows: one-third (1/3) to alleged unpaid wages, one-third (1/3) to alleged interest and one-third (1/3) to alleged penalties. *Id. at 3.13.5.*

• **PAGA Allocation**: $100,000 shall be allocated as a settlement of Plaintiffs' claims under the Private Attorney General Act of 2004 ("PAGA"), California Labor Code section 2699 et seq., with 75% thereof earmarked for the California Labor Workforce Development Agency. *Id. at Section 1.22.*

• **Service Awards**: Service payments to the Class Representatives (subject to Court approval) of $20,000 to Plaintiff Kimberly Williams, $10,000 to Plaintiff Carneisha Forney, and $10,000 to Plaintiff Laurie Mullen, which TJX will not oppose. *Id. at Section 3.13.8.* The proposed service payments total less than one-half of one-percent of the Settlement.

• **Attorneys' Fees and Costs:** Plaintiffs' attorneys' fees and costs are included in the gross settlement amount of $8,500,000. The Settlement provides that TJX will not oppose a fee application of up to thirty percent (30%) of the Gross Settlement Fund plus out-of-pocket costs. *Id. at Section 3.13.9.* Plaintiffs will make a separate motion for attorneys' fees and costs under Rule 23(h) on a date to be set by the Court.

13

1   • **Release of Claims:** Settlement Class members who do not request exclusion shall release

2   Defendants and their subsidiaries, affiliates and/or parents (including without limitation The TJX

3   Companies, Inc., Marshalls of MA, Inc. and Newton Buying Company of CA, LLC), employee

4   benefit plans sponsored or maintained by any of the foregoing, their attorneys, and their respective

5   successors and predecessors in interest; all of their respective officers, directors, employees,

6   administrators, fiduciaries, trustees, beneficiaries and agents; and each of their past, present and

7   future officers, directors, shareholders, employees, agents, principals, heirs, representatives,

8   accountants, auditors, consultants, insurers and reinsurers. Agreement ¶ 1.30.

9   • **Notice of Proposed Settlement:** The Notice sets forth in plain terms, a statement of case,

10   the terms of Settlement, the approximate amount of attorneys' fees, costs, and service awards being

11   sought, an explanation of how the settlement allocations are calculated, each class member's

12   percentage of the total class workweeks, as well as a means by which class members may make a

13   preliminary calculation of the approximate amount of money they would receive in the event all

14   class members participate in the settlement. Exhibit A to Settlement Agreement. Class members

15   will be notified by first class mail of the settlement. *Settlement Agreement, at 3.12.3*. ILYM Group,

16   the parties' selected Settlement Administrator, will undertake its best efforts to ensure that the

17   notice is provided to the current addresses of class members, including conducting a national

18   change of address search and re-mailing the notice to updated addresses. *Id. at ¶ 3.12.4.*  Moreover,

19   a static website shall be maintained by the Claims Administrator which shall have links to the

20   Notice of Settlement, the Settlement Agreement, motions for approval and for attorneys' fees, and

21   a Post Office Box for receipt of Class Member communications. Agreement ¶ 3.4.

22   **IV. CLASS CERTIFICATION IS APPROPRIATE FOR SETTLEMENT PURPOSES**

23   **A. The elements of *Federal Rules of Civil Procedure*, Rule 23(a) are satisfied**

24   **1. Rule 23(a)(1): Numerosity**

25   The first requirement of *Federal Rules of Civil Procedure*, Rule 23(a) is that the class be so

26   numerous that joinder of all members would be "impracticable." See *Federal Rules of Civil*

27   *Procedure*, Rule 23(a)(1). Numerosity is satisfied with as few as 40 class members. See *Welling v.*

28

14

*Allexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994). In this case, the Settlement Class is comprised of the approximately 82,000 class members - all of whom are identifiable from TJX's records - are sufficiently numerous to satisfy *Federal Rules of Civil Procedure*, Rule 23(a)(1).

### 2. *Federal Rules of Civil Procedure*, Rule 23(a)(2): Commonality

*Federal Rules of Civil Procedure*, Rule 23(a) also requires "questions of law or fact common to the class." *Federal Rules of Civil Procedure*, Rule 23(a)(2). The commonality requirement is permissively construed by the Ninth Circuit such that the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). Plaintiffs meet the criteria of Rule 23(a)(2) because the Class claims of TJX's retail store employees turn upon answers to overarching common questions regarding TJX's policies and procedures that are capable of class-wide resolution for settlement purposes. For settlement purposes, the common questions raised by employees, include: whether TJX's break and compensation policies are compliant with California law, whether TJX's wages uniform wage statements are compliant with California law and whether TJX's closing procedures result in underpayment of wages to employees (among others.) Because each and every member of the proposed Settlement Class, by definition, personally performed labor, each Member was subject to the same policies and asserts the same types of injury arising from the same conduct by TJX. Thus, these common questions establish Rule 23(a) commonality.

### 3. Federal Rules of Civil Procedure, Rule 23(a)(3): Typicality

Plaintiffs must establish that the "claims or defense of the representative parties are typical of the claims or defenses of the class." *Federal Rules of Civil Procedure*, Rule 23(a)(3). This is a permissive standard that is met so long as the representative claims "are reasonably coextensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. Here, the named Plaintiffs seeking to represent the proposed Settlement Class satisfy the typicality requirement, because they have held the same positions and assert the same types of injury arising from the same conduct by TJX.

### 4. *Federal Rules of Civil Procedure*, **Rule 23(a)(4): Adequacy of Representation**

Rule 23 also requires that "the representative parties fairly and adequately protect the interests of the class." *Federal Rules of Civil Procedure*, Rule 23(a)(4). To satisfy this element, Plaintiffs must establish that: (1) the class representatives do not have a conflict of interest; and (2) class counsel will adequately represent the interests of the class. See *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir. 1978). As this Court, has already held, there is no conflict of interest between the class representatives and the proposed Settlement Class. *Villalpando*, 303 F.R.D. at 607. Furthermore, Plaintiffs and class counsel are well qualified and willing to vigorously prosecute the interests of the Class. Bradley Decl. at ¶ 17. The elements of *Federal Rules of Civil Procedure*, Rule 23(b)(3) are satisfied.

### B. The Elements of *Federal Rules of Civil Procedure*, **Rule 23(b) are Satisfied**

Having met the four prerequisites for class certification in Rule 23(a), Plaintiffs submit that the proposed Settlement Class also satisfies *Federal Rules of Civil Procedure*, Rule 23(b)(3). *Federal Rules of Civil Procedure*, Rule 23(b)(3) certification is proper when common questions "predominate over any questions affecting only individual members" and class resolution is "superior to other available methods for the fair and efficient resolution of the controversy." *Federal Rules of Civil Procedure*, Rule 23(b)(3). Both *Federal Rules of Civil Procedure*, Rule 23(b)(3)'s predominance and superiority requirements are satisfied for purposes of certifying the proposed Settlement Class.

### 1. Common Questions Predominate

"The Rule 23(b)(3) predominance inquiry tests whether proposed class [is] sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This Court has already held that a class identical to the proposed Settlement Class satisfies the predominance requirement with regard to liability on all of Plaintiffs' claims (except for

16

the overtime claim). [ECF 150, 261, 311]. Moreover, as this Court has observed, the claims brought by the proposed Settlement Class all arise from the same conduct—TJX's uniform classification of all its Drivers as independent contractors, and the common core of policies governing the Drivers' work, which applied to all members of the proposed Settlement Class (regardless of how often they worked). See *Villalpando v. TJX Direct Inc*., 2016 WL 1598663, at *11-17 (N.D. Cal. Apr. 21, 2016).

### 2. A Class Action Is Superior

*Federal Rules of Civil Procedure*, Rule 23(b)(3)'s final requirement is "that the class action be superior to other methods of adjudication." This requirement is satisfied because there is no indication that class members seek to individually control their cases, that individual litigation is already pending in other forums, or that this particular forum is undesirable for any reason. Federal Rules of Civil Procedure, Rule 23(b)(3)(A)-(D). In addition, the alternative of hundreds of individual actions "is not realistic." See *Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 210 (N.D. Cal. 2009) (Spero, J.). Accordingly, certification of a settlement class is superior to any other method of resolving this matter, since it will promote economy, expediency, and efficiency.

### V. OVERVIEW OF THE CLASS ACTION SETTLEMENT PROCESS

A class action settlement like the one proposed here must be approved by the Court to be effective. See *Federal Rules of Civil Procedure*, Rule 23(e). The process for court approval is comprised of three principle steps:

1. A preliminary approval hearing, at which the court considers whether the proposed settlement is within the range of reasonableness possibly meriting final approval;

2. Dissemination of notice of the proposed settlement to class members for comment; and

3. A formal "fairness hearing," or final approval hearing, at which the Court decides whether the proposed settlement should be approved as fair, adequate, and reasonable to the class.

See Manual for Complex Litigation (Fourth) §§ 21.632-34 (2004). This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as

17

the guardian of class interests. See Newberg on Class Actions, § 11.22, et seq. (4th ed. 2002) ("Newberg").

Plaintiffs ask the Court to take the first step in the settlement approval process and grant preliminary approval of the settlement. Plaintiffs further request that the Court order dissemination of notice to class members, and establish a schedule for the final approval process.

## VI. THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A. The Role of Preliminary Approval

At this preliminary approval stage, the Court determines whether the proposed settlement "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval," such that it is worthwhile to give the class notice of the settlement and proceed to a formal fairness hearing. *Eddings v. Health Net, Inc*., 2013 WL 169895, * 2 (C.D. Cal. Jan. 16, 2013); see also 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.25 (4th ed. 2002). The proposed settlement here meets all of these criteria.

### B. The Proposed Settlement Meets the Preliminary Approval Standards

The law favors the compromise and settlement of class-action suits. See, e.g., *Churchill Vill. L.L.C. v. Gen. Elec*., 361 F.3d 566, 576 (9th Cir. 2004); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Ninth Circuit recognizes the "overriding public interest in settling and quieting litigation ... particularly ... in class action suits ..." *Van Brokhorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 1976); see also *Weeks v. Kellogg Co.*, 2013 WL 6531177, at *10 (C.D. Cal. Nov. 23, 2013) (quoting *In re Synocor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008)) ("'[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'").

"[T]he decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." *Hanlon*,

150 F.3d at 1026 (internal citations and quotations omitted). In exercising such discretion, the Court should give "proper deference to the private consensual decision of the parties ... [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027 (internal citations omitted); *Federal Rules of Civil Procedure*, Rule 23(e).

This determination involves a balancing of several factors, including: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; [and] the extent of discovery completed'" among other factors. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850-51 (N.D. Cal. 2010) (quoting *Class Plaintiffs*, 955 F.2d at 1291).

At the preliminary approval stage, the Court need only find that the proposed settlement is within the "range of reasonableness" such that dissemination of notice to the class, and the scheduling of a fairness hearing, are appropriate. 4 Newberg § 11.25; see also *Carter v. Anderson Merchandisers, LP*, 2010 WL 144067, at *4 (C.D. Cal. Jan. 7, 2010) *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079-80 (N.D. Cal. 2007). Preliminary approval of a proposed class action settlement is appropriate where: "[T]he proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval[.]" *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079. For several reasons, the instant settlement clearly meets the requirements for preliminary approval.

### 1. The Settlement is Entitled to a Presumption of Fairness

Where a settlement is the product of arms-length negotiations conducted by experienced class counsel and follows sufficient discovery, the Court begins its analysis with a presumption that the settlement is fair and reasonable. See 4 Newberg § 11.41; *Brown v. Hain Celestial Grp., Inc.*,

19

2016 WL 631880, at *5 (N.D. Cal. Feb. 17, 2016); see also *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *4 (C.D. Cal. July 21, 2008). At this stage, so long as the settlement falls into the range of possible approval, the presumption applies and the settlement should be preliminarily approved.

First, the Settlement was reached after settlement negotiations supervised by two well-respected mediators experienced in the area of wage and hour class action cases, Mark Rudy and Michael Dickstein. The parties participated in two full days of formal mediations supervised by the mediators, as well as many additional informal settlement meetings directly between select counsel for the parties. Bradley Decl. at ¶20.

Second, Class Counsel here have extensive experience litigating and settling complex wage and hour class actions. Id. at ¶17. They have investigated the factual and legal issues raised in this action, and diligently litigated the class members' claims for four years. As noted above, extensive discovery, motion practice and trial preparation has allowed the parties to assess the strengths and weaknesses of the claims herein and the benefits of the proposed Settlement. Id. at ¶¶ 9,10. These and other proceedings in the case produced a thorough vetting (pre-settlement) of the factual and legal bases for Plaintiffs' claims and the key defenses to those claims. Accordingly, the fact that qualified and well-informed counsel endorse the proposed settlement as being fair, reasonable, and adequate weighs heavily in favor of approval. See *Hain Celestial Grp*. 2016 WL 631880, at *5.

**2. The Settlement is Fair Given the Settlement Benefits and the Risks Associated with Continued Litigation**

A proposed settlement is not to be measured against a hypothetical ideal result that might have been achieved. See, e.g., *In re Heritage Bond Litig*., 2005 WL 1594403, at * 2 (C.D. Cal. June 10, 2005) (quoting *Officers for Justice*, 688 F.2d at 625) (a proposed settlement should not "'be judged against a hypothetical or speculative measure of what might have been achieved.'"); *Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-

settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial.").

The Settlement represents a very strong result for the Class. As discussed above, even after estimated attorneys' fees and costs, proposed service awards, the PAGA allocation, and the estimated costs of settlement administration, an estimated amount in excess of $5 million would be distributed to members of the Settlement Class. Id. at ¶ 21. This works out to an average share of over $60 per person. Id. Class Members with longer terms of service will receive two to three times this amount, and perhaps more. This will bring substantial relief to the Class, which is largely composed of low-wage workers who, as a practical matter, lack the means to bring individual suits to assert their rights.

Moreover, the settlement includes an injunctive component whereby Defendant has agreed to modify its wage statement to address the alleged deficiencies.  Such modifications effectuate the purpose of Section 226 (to give employees clarity as to how their wages are calculated, so they can verify that their wages are calculated appropriately under California law).  See e.g. *Soto v. Motel 6 Operating, L.P.*, 4 Cal.App.5th 385, 392, 208 Cal.Rptr.3d 618 (Ct. App. 2016) ("section 226(a)'s statutory purpose ... is to *document* the *paid wages* to ensure the employee is fully informed regarding the calculation of *those wages*." (emphasis in original)).

The potential risks attending further litigation also support preliminary approval. Courts have long recognized the inherent risks and "vagaries of litigation," and emphasized the comparative benefits of "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 526. Proceeding to certification and subsequently through trial (and the inevitable appeals) could add four years or more to the resolution of this case, which has already been pending for approximately three and a half years.

Moreover, as developments throughout this litigation have shown, the law regarding certification of similar claims and class-wide proof of damages by just and reasonable inference in

wage and hour cases, among other issues, is precarious. For example, the Ninth Circuit Court of Appeals recently affirmed the denial of certification in a case involving similar "lockdown" claims. See e.g. *Eric Stiller and Joseph Moro et al. v. Costco Wholesale Corp.*, Ninth Circuit Court of Appeal Case Number 15-55361.  On a related note, during the pendency of this litigation the Honorable granted summary judgment in favor of defendant Apple on similar claims to the "bag check" allegations in the present matter. *Frlekin v. Apple Inc*., N.D. Cal. Case No. C 13-03451 WHA, 2015 WL 6851424 (N.D. Cal. Nov. 7, 2015). The *Frlekin* Court determined that employees were not working when they were waiting for exit inspections.

Additionally, in late 2015, the California Private Attorneys General Act (PAGA) was amended to allow employers the right to "cure" certain commonly litigated defects in employee wage statements within 33 days of notice by the employee in order to avoid litigation. Such amendment represents the general risk of the law changing over time. Bradley Decl. at ¶¶ 21, 22. These are just a few examples of how Plaintiffs' claims could have been weakened or obviated by legislation or unfavorable legal rulings during the pendency of litigation and appeal.

To be sure, a number of cases have found wage and hours actions to be amenable to class resolution. However, some courts have gone the other way, finding that some of the very claims at issue here--meal period, rest period, and off-the-clock violations--were not suitable for class adjudication because they raised too many individualized issues.[5] Thus, given the uncertainty surrounding both certification and liability as to the claims alleged in the litigation, it was a virtual

---

[5] *Jimenez v. Allstate Ins. Co*., 2012 U.S. Dist. LEXIS 65328 (C.D. Cal. Apr. 18, 2012) (denying motion to certify meal and rest break classes based on employer's practice of understaffing and overworking employees); *Gonzalez v. Officemax N. Am.*, 2012 U.S. Dist. LEXIS 163853 (C.D. Cal. Nov. 5, 2012) (same); *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 587-88 (C.D. Cal. 2008) (denying certification of driver meal and rest period claims based on the predominance of individual issues); *Kenny v. Supercuts, Inc*., 252 F.R.D. 641, 645 (N.D. Cal. 2008) (denying certification on meal periods claim); *Blackwell v. Skywest Airlines, Inc*., 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (declining to certify class action because individual issues predominated when different employee stations provided different practices with respect to meal periods).

22

certainty that the litigation would proceed, at some point in the course of the litigation, through the appellate process.

Given that the class members in this case are primarily low wage workers for whom receiving speedy remuneration is particularly important, the potential for years of delayed recovery is a significant concern. Considered against the risks of continued litigation, and the importance of the employment rights and a speedy recovery to plaintiff class members, the totality of relief provided under the proposed Settlement is more than adequate and well within the range of reasonableness. Indeed, highly analogous cases have settled for considerably less. See, e.g., *Sorenson v. PetSmart, Inc*., Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.,* Case No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); *Gomez v. Amadeus Salon, Inc.*, Case No. BC392297) (average net recovery of approximately $20); *Delgado v. New Albertson's, Inc*., Case No. SACV08-806 DOC-RBNx (CD. Cal.) (average net recovery of approximately $45.); *Gomez v. Amadeus Salon, Inc.,* Case No. BC392297) (average net recovery of approximately $20); *Clay v. Bed Bath & Beyond Inc., et. al*, Case No. No. BC432877. (Los Angeles Super Ct.) (average net recovery of approximately $62.); *Doty v. Costco Wholesale Corp*., Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately $65).

### 3. The Service Awards to the Class Representatives are Fair and Reasonable

It is Plaintiffs position that the named plaintiffs in class action litigation are eligible for reasonable service awards. Plaintiffs will be seeking approval of the proposed service awards in conjunction with the motion for final approval.

Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp*., 563 F.3d 948, 958-59 (9th Cir. 2009); see also *Weeks*, 2013 WL 6531177, at *34. The factors courts use in determining whether to authorize a service award include: "'1) the risk to the

23

class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representatives; 4) the duration of the litigation[;] and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation."' *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

The amounts requested here are reasonable and within the range approved by courts in this Judicial District. See, e.g. *Gaudin v. Saxon Mortgage Servs., Inc.*, 2015 WL 7454183, at *10 (N.D. Cal. Nov. 23, 2015) (finding service award of $15,000 to be "fair and reasonable"); *Van Vranken*, 901 F.Supp. at 299 (approving $50,000 participation award to plaintiffs).

All of the above factors support the service awards requested here. The service awards are intended to compensate the named Plaintiffs for the important role they played for the benefit of the class, and the substantial time, effort, and risks they undertook to secure the result obtained on behalf of the class. In agreeing to serve as class representatives, they accepted the responsibility of representing the interests of all class members. Roberts Decl. ¶16; Forney Decl. ¶16; Williams ¶16. Indeed, each of the representative plaintiffs provided information during lengthy interviews. Id. Each responded to extensive written discovery, provided documents, identified witnesses, and assisted Class Counsel in preparing for depositions and in seeking discovery. Roberts Decl. ¶¶ 13, 14; Forney Decl. ¶¶ 13, 14; Williams ¶¶ 13, 14. Each prepared for and sat for their depositions. Roberts Decl. ¶14; Forney Decl. ¶14; Williams ¶14.  Ms. Roberts sat for two full days of deposition which involved travel from Vallejo to San Francisco.  Indeed, Ms. Roberts missed multiple days of work and thus, wages, to litigate this matter on behalf of the class. Roberts Decl. ¶14. Each also assisted in preparing and evaluating the case for mediation, and in the settlement process itself. Roberts Decl. ¶ 12; Forney Decl. ¶12; Williams ¶12. Each incurred considerable reputational risk in bringing the case.

Finally, each of representative plaintiffs signed a broader release than the unnamed Class Members by agreeing to generally release all claims (based on whatever set of facts or

24

circumstances) that they may have in the present or the future against any defendant in this action as well as waiving the right to future employment with TJX. *Settlement Agreement, at Section 3.11.*

### 4. Plaintiffs are Entitled to Reasonable Attorneys' Fees and Costs

Plaintiffs' counsel will be filing a separate motion for attorneys' fees and costs pursuant to Federal Rule 23(h) with their precise amount of attorneys' fees and costs requested. Any portion of the requested fee that is not awarded to Class Counsel will remain part of the Settlement Fund and will not revert to TJX. *Settlement Agreement at Section 3.13.9.* Plaintiffs propose that they file their motion for attorneys' fees within two weeks of the mailing of the class notice to afford class members a full opportunity to review and comment on it. See *In re Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.,* 618 F.3d 988, 991 (9th Cir. 2010).

The fee motion will show that the attorneys' fees provided under the settlement are fair and reasonable under both the lodestar-multiplier and percentage of the fund approaches to awarding fee requests in similar cases. To date, Plaintiffs' counsel have expended considerable time and resources to the litigation. Plaintiffs' counsel have also incurred approximately $60,000 in out of pocket costs. Bradley Decl. at ¶¶26. Moreover, the fees requested are commensurate with the overall relief obtained and there are no indicia that the fees were negotiated at the expense of class members.

In sum, given the favorable terms of the settlement and the manner in which these terms were negotiated, the proposed settlement should be preliminarily viewed as a fair, reasonable, and adequate compromise of the issues in dispute. The Court should therefore grant preliminary approval of the settlement, order dissemination of notice to the Class for comment, and proceed to a formal fairness hearing.

### D. The Court Should Order Dissemination of the Proposed Class Notice

### 1. The Settlement Agreement Provides for the Best Method of Notice Practicable Under the Circumstances

The federal rules require that before finally approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."

25

1   Fed. R. Civ. P. 23(e). Where the class is certified pursuant to Rule 23(b)(3), the notice must be the

2   "best notice practicable under the circumstances, including individual notice to all members who

3   can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

4         The parties have agreed on a notice plan that would provide class members with individual

5   notice by first class mail. See Settlement Agreement at Section 3.12.3. Plaintiffs request that the

6   Court approve this method of notice as the best practicable under the circumstances. See, e.g.,

7   *Rannis v. Recchia*, 380 F. App'x. 646, 650 (9th Cir. 2010) (finding mailed notice to be the best notice

8   practicable where reasonable efforts were taken to ascertain class members addresses). Plaintiffs

9   further request that the Court appoint ILYM Group to serve as Settlement Administrator.

10   **2. The Proposed Form of Notice Adequately Informs Class Members of the Litigation**

11   **and Their Rights in Connection with the Settlement**

12         The notice provided to class members should "clearly and concisely state in plain, easily

13   understood language" the nature of the action; the class definition; the class claims, issues, or

14   defenses; that the class member may appear through counsel; that the court will exclude from the

15   class any member who requests exclusion; the time and manner for requesting exclusion; and the

16   binding effect of a class judgment on class members. Fed. R. Civ. P. 23(c)(2)(B).

17

18         The form of notices proposed by the parties complies with the requirements of Rule 23 and

19   are substantially similar to those encouraged by the Federal Judicial Center. They clearly and

20   accurately inform class members of the material terms of the settlement and their rights pertaining

21   to it, including the right to opt out from or object to the settlement. Id. The notices also will be

22   tailored for each individual and provide the class member's dates of employment, total workweeks,

23   and a method by which class members may calculate an estimate of his or her settlement share in

24   the event that all class members participate in the settlement. Id. Plaintiffs thus request that the Court

25   approve the form of notice.

26

27

28

**E. The Court should Set a Schedule for Final Approval**

The next steps in the settlement approval process are to notify the class of the proposed settlement, allow class members an opportunity to file any objections or opt-outs, and hold a final approval hearing. Toward those ends, the parties propose the following schedule:

| Event | Proposed Deadline |
|---|---|
| Deadline for TJX to provide updated class list to Class Administrator | 15 calendar days after entry of Preliminary Approval |
| Deadline for Class Administrator to mail Notice of Settlement | 21 calendar days after provision of class list to third party administrator (36 days after entry of Preliminary Approval) |
| Deadline for Plaintiffs to file brief in support of attorneys' fees application | 14 calendar days after class notice is mailed (50 days after entry of Preliminary Approval) |
| Last day for Class Members to file any requests for exclusions, objections or disputed claim amounts | 60 calendar days from mailing by the Settlement Administrator |
| Deadline for the parties' replies to any class member objections: | [TO BE SET BY COURT] |
| Deadline for Plaintiffs to file motion for final approval of class action settlement | [TO BE SET BY COURT] |

| Final Fairness Hearing and hearing on Plaintiffs' motion for fees, costs and service awards | [TO BE SET BY COURT] |
|---|---|

**VII. CONCLUSION**

For the foregoing reasons, Plaintiffs' counsel respectfully requests that the Court enter the accompanying Proposed Order granting preliminary approval of the proposed settlement, conditionally certifying the settlement class, directing dissemination of the class notice, and setting a hearing for the purpose of deciding whether to grant final approval of the settlement.

Respectfully submitted,

Dated: January 31, 2017                    BRADLEY GROMBACHER, LLP

BY: _____/S/__ Marcus J. Bradley_____
        MARCUS J. BRADLEY
        Attorneys for Plaintiffs,
        KIMBERLY ROBERTS,
        CARNEISHA FORNEY,
        and LAURIE MULLEN

28