1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7   KIMBERLY ROBERTS, ET AL.,              Case No.  13-cv-04731-MEJ

8                    Plaintiffs,           **ORDER RE: SECOND MOTION FOR**
                                           **PRELIMINARY APPROVAL**
9          v.
                                           Re: Dkt. No. 81
10  MARSHALLS OF CA, LLC, et al.,

11                   Defendants.

12

13                         **INTRODUCTION**

14         Plaintiffs Kimberly Roberts, Carneisha Forney, and Laurie Mullen (collectively,

15  "Plaintiffs") move this Court to preliminarily approve the revised class action settlement they have

16  reached with Defendants.  Mot., Dkt. No. 81; *see* Bradley Decl., Ex. A ("Revised Settlement"),

17  Dkt. No. 81-1.  The Court denied the first proposed settlement (the "First Settlement"), finding

18  Plaintiffs failed to show that the proposed class warranted certification and that the settlement was

19  fair, adequate, and reasonable.  Order at 9-25, Dkt. No. 77; *see* First Settlement, Dkt. No. 70-4.

20  The Court permitted Plaintiffs to submit a revised settlement.  *Id.* at 25-26.  This Motion follows.

21  Having considered the parties' positions, the relevant legal authority, and the record in this case,

22  the Court **GRANTS** Plaintiffs' Motion for the reasons set forth below.

23                         **BACKGROUND**

24  **A.     Factual Allegations**

25         Defendants TJ Maxx of CA, LLC ("TJ Maxx"); Marshalls of CA, LLC ("Marshalls"); and

26  HomeGoods, Inc. ("HomeGoods") (collectively, "Defendants") are corporations engaged in the

27

28

United States District Court
Northern District of California

1    retail sales business in the State of California.  Second Am. Compl. ("SAC") ¶ 21, Dkt. No. 44.[1]

2    Defendants are subsidiaries of The TJX Companies, Inc. ("TJX").  Mot. at 5.

3         Plaintiffs allege Defendants employed non-exempt workers at their retail store locations

4    and paid these workers an hourly wage based on a forty hour or less work week.  SAC ¶ 29; *see*

5    Mot. at 6-7 (describing workforce positions).  Plaintiffs contend Defendants instituted a

6    nationwide policy of "personal package and bag searches," which requires all hourly employees to

7    wait in line and be searched for possible store items or merchandise taken without permission

8    and/or other contraband.  *Id.* ¶ 30.  Employees are searched before leaving for their meal breaks

9    and after clocking out at the end of their shifts.  *Id.*  Plaintiffs allege these searches are necessary

10   to the employees' primary work and done solely for Defendants' benefit.  *Id.*

11        Employees are not compensated for time spent waiting for these searches.  *Id.*  Because

12   hourly employees often take meal breaks and/or end their shifts at the same time, there are

13   frequently lengthy wait times.  *Id.* ¶ 31.  Plaintiffs contend they were not permitted to leave the

14   store until they had been searched.  *Id.* ¶ 32.  As a result, Defendants prevented Plaintiffs from

15   taking their full 30-minute meal or 10-minute rest breaks and did not compensate them for missed

16   breaks.  *Id.* ¶ 30.

17        Plaintiffs further allege Defendants failed to provide them with wage statements that

18   complied with California Labor Code section 226(a).  *Id.* ¶ 95.  Specifically, Defendants failed to

19   compensate employees at the proper Overtime Rate of Pay and thus did not fully pay Plaintiffs the

20   amount of overtime pay which they were owed.  *Id.* ¶¶ 34-35.

21        Finally, Plaintiffs allege that at the termination of their employment, Defendants did not

22   pay Plaintiffs and other class members their unused vested vacation wages or all wages earned.

23   *Id.* ¶¶ 88-93, 100-05.

24   **B.    Procedural History**

25        Roberts originally brought this class action against The TJX Companies, Inc.; Marshalls of

26

27   _____

     [1] The SAC is the operative complaint; however, the Settlement provides that "Plaintiffs will file

28   the Third Amended Complaint ['TAC'] . . .  if the Court grants Preliminary Approval of the
     Settlement."  Revised Settlement ¶ 3.6; *see id.*, Ex. D (proposed TAC).

*United States District Court*
*Northern District of California*

CA, LLC; and HomeGoods, Inc.  *See* Compl., Dkt. No. 1.  She subsequently amended the

Complaint to name T.J. Maxx as a defendant to replace The TJX Companies.  *See* First Am.

Compl., Dkt. No. 27.  Roberts filed the operative SAC on March 4, 2015.  *See* SAC.  In addition

to adding new claims, the SAC names as Plaintiffs Forney and Mullen.

The SAC alleges Defendants violated various provisions of the California Labor and

Business and Professions Code, as well as California's Industrial Welfare Commission ("IWC")[2]

wage orders.  Plaintiffs assert nine causes of action under California law against Defendants: (1)

failure to pay wages, Cal. Lab. Code §§ 204, 510, 1194, 1197-98; (2) failure to provide meal

periods or compensation in lieu thereof, *id.* §§ 226.7, 512; (3) failure to permit rest breaks or

provide compensation in lieu thereof, *id.* § 226.7; (4) failure to pay overtime compensation, *id.* §§

200, 203, 226, 226.7, 500, 510, 512, 558, 1194, 1198; Cal. Code Regs. tit. 8, § 11140(12); (5)

forfeiture of vacation pay, Cal. Lab. Code §§ 203, 227.3; (6) failure to furnish an accurate

itemized wage statement, *id.* § 226; (7) failure to pay compensation upon discharge, *id.* §§ 201-03;

(8) unfair business practices, Cal. Bus. & Prof. Code § 17200 et seq.; and (9) the Private

Attorneys' General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698 et seq.  SAC ¶¶ 51-109.

Plaintiffs also assert their first through third causes of action violate "the applicable IWC Wage

Order."  *Id.* ¶¶ 53-56, 65, 71-72, 76, 78.

On August 26, 2016, Plaintiffs notified the Court that the parties had reached a tentative

settlement.  Dkt. No. 62.  On February 1, 2017, Plaintiffs filed a Motion for Preliminary Approval

of the First Settlement.  Dkt. No. 70.  The Court denied that Motion without prejudice based on

the following deficiencies.  *See* Order.  First, the Court found several issues with the proposed

class[3] precluded class certification.  Plaintiffs failed to show their claims were typical of the class.

---

[2] "The Industrial Welfare Commission (IWC) is the state agency empowered to formulate
regulations (known as wage orders) governing employment in the State of California." *Morillion
v. Royal Packing Co.*, 22 Cal. 4th 575, 581 (2000), *as modified* (May 10, 2000) (internal quotation
marks omitted).  IWC Orders are codified in the California Code of Regulations title 8, section
11140.

[3] The First Settlement proposed a class of "all current and former non-exempt employees who
worked at a T.J. Maxx, Marshalls or Homegoods branded retail store in the State of California
during the Class Period."  First Settlement ¶ 1.3.

*Id.* at 12-13.  In particular, the proposed class consisted of "all current and former non-exempt employees" and did not distinguish between the employees' positions.  *See* First Settlement ¶ 1.3. Plaintiffs did not show that class members were uniformly subjected to the same security screenings: while "certain employees were permitted to perform bag inspections, which the SAC alleges and counsel argued at the hearing contributed to the problems for which Plaintiffs seek redress" there was no indication that "class members who implemented Defendants' alleged policies and practices were also subject to such inspections themselves." *Id.* at 12-13.  Moreover, because Plaintiffs did not describe how their positions were similar to those held by class members, the Court was "unable to find there [were] no dissimilarities among the class[] that would 'impede the generation of common answers apt to drive the resolution of the litigation.'" *Id.* at 12 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (internal quotation marks and citation omitted)).  For this reason, Plaintiffs also failed to show "their interests align[ed] with those of the classes," which prevented the Court from finding they were adequate class representatives.  *Id.* at 14.

The Court further found that individual issues so predominated as to preclude certification under Rule 23(b)(3).  *Id.* at 15-18.  Specifically, although managerial employees' conduct formed the basis of some of Plaintiffs' claims, the First Settlement did not distinguish between managerial and non-managerial employees.  *Id.* at 16-17.  By treating these two categories of employees alike, the First Settlement provided benefits for some class members who were ostensibly the cause of the other class members' injuries.  *Id.* at 17.  In addition, the First Settlement provided benefits to some class members to which they would not be entitled by law.  Plaintiffs' fifth and seventh causes of action alleged Defendants failed to pay class members all vested vacation wages and wages earned at the end of their employment in violation of California Labor Codes sections 201-203 and 227.3.  *See* SAC ¶¶ 92-97, 105-10.  However, such causes of action only applied to former employees, not current ones.  Order at 17-18.  There was no indication as to how many class members were former employees who would be entitled to recover under these claims, compared to current employees who could not.  *Id.* at 18.  The Court therefore could not find class certification was appropriate under either Rule 23(a) or (b)(3).

Second, even if the Court had certified the class, it could not approve the Settlement as fair, adequate, or reasonable. *See id.* at 18-25. The Court was unable to find the First Settlement did not provide preferential treatment to certain class members, as it did not distinguish between full- and part-time employees, wage differentials amongst class members, or former and current employees. *Id.* at 22-23. Plaintiffs also failed to provide sufficient information to allow the Court to determine whether the First Settlement fell within the range of possible approval: Plaintiffs did not explain how they calculated their estimated potential recovery or the value of the injunctive relief. *Id.* at 24-25.

## REVISED SETTLEMENT TERMS

The key provisions of the Revised Settlement are as follows.

**A.      The Revised Settlement Classes**

The Revised Settlement Class consists of "all current and former non-exempt employees who worked at a T.J. Maxx, Marshalls or HomeGoods branded retail store in the State of California during the Class Period." Revised Settlement ¶ 1.3. The Class Period is defined as "October 10, 2009 through and including August 10, 2016." *Id.* ¶ 1.8.

The Revised Settlement Class is divided into two subclasses: the Monetary Payment Class and the Prospective Relief Class. *Id.* ¶ 1.19. The Monetary Payment Class is defined as "all Class Members who do not submit a timely Request for Exclusion (i.e., opt-out), and therefore, are entitled to receive an Individual Settlement Payment." *Id.* This class is further subdivided into the Manager/Coordinator Monetary Payment Class (the "Manager/Coordinator Class") or the Non-Manager/Non-Coordinator Payment Class (the "Non-Manager/Non-Coordinator Class"). *Id.* ¶¶ 1.19, 1.17, 1.22. The Manager/Coordinator Class consists of "all current and former non-exempt employees who worked a T.J. Maxx, Marshalls or HomeGoods branded retail store in the state of California during the Class Period" who "held a non-exempt manager title or non-exempt coordinator title." *Id.* ¶ 1.17. Non-Manager/Non-Coordinator Class members are "all current and former non-exempt employees who worked a T.J. Maxx, Marshalls or HomeGoods branded retail store in the state of California during the Class Period" who "never held a manager title or coordinator title during the Class Period." *Id.* ¶ 1.22. Members of both subclasses must also be

part of the Monetary Payment Class, that is, "all Class Members who do not submit a timely Request for Exclusion (i.e., opt-out), and therefore, are entitled to receive an Individual Settlement Payment." *Id.* ¶ 1.19.

Finally, the Prospective Relief Class includes "all non-exempt employees working at a T.J. Maxx, Marshalls or HomeGoods branded retail store in the state of California during the Class Period." *Id.* ¶ 1.31. The Prospective Relief Class is a mandatory class with no right to opt out. *Id.*

**B.    Remedies**

The Revised Settlement provides both monetary and injunctive relief. Defendants agree to pay a Total Settlement Amount of $8.5 million dollars, which includes: (1) settlement payments to participating Monetary Payment Class members; (2) up to $2,550,000 in attorneys' fees and up to $60,000 in litigation costs/expenses to Class Counsel; (3) up to $75,000 payment to the California Labor & Workforce Development Agency ("LDWA") to account for its portion of the PAGA Award; (4) up to $250,000 in Settlement Administration Costs; and (5) up to $40,000 in Service Awards for Plaintiffs. *Id.* ¶¶ 1.6, 1.26, 1.37, 1.39, 1.43. The Net Distribution Fund represents the Total Settlement Amount less the LDWA, PAGA, Service, and Class Counsel Awards—that is, approximately $5,525,000. *Id.* ¶ 1.21.

Defendants further agree to modify their wage statements, as soon as practicable but no later than June 30, 2017.[4] *Id.* ¶ 3.13.6. Defendants agree to use the proposed revised Wage Statement Exemplar, subject to Court approval. *Id.* Defendants may update their wage statements in the future as needed. *Id.*

**C.    Distribution of Funds**

Each Monetary Payment Class member will receive an Individual Settlement Payment. *Id.* ¶¶ 1.16; 3.14.3. The precise method of calculating an Individual Settlement Payment depends on whether the class member is part of the Manager/Coordinator or the Non-Manager/Non-Coordinator Class. The process is materially identical for each class.

---

[4] At the hearing, Defendants represented this modification has already been implemented.

United States District Court
Northern District of California

1.    <u>Workweek Amount</u>

The first step requires establishing a workweek amount, which will be determined once (1) the Settlement Administrator receives all timely requests for exclusion and identifies the number of class members in the Manager/Coordinator and Non-Manager/Non-Coordinator Classes; and (2) the amount of the Net Distribution Fund is determined. *Id.* ¶ 3.13.4.1.

The Non-Manager/Non-Coordinator Class will have a different workweek value than that of the Manager/Coordinator Class.[5] *See id.* The Revised Settlement requires the Settlement Administrator to determine the workweek amount that will apply to Non-Manager/Non-Coordinator Class members before determining that which will apply to the Manager/Coordinator Class. *Id.* To do so, the Settlement Administrator shall determine the total number of Manager/Coordinator Workweeks ("MCWW") and the total number of Non-Manager/Non-Coordinator Workweeks ("NMNCWW"). *Id.* The Settlement Administrator shall then input those values into the following formula to solve for the Non-Manager/Non-Coordinator Class Workweek Amount ("NMNCWA"):

$$\text{MCWW} \times (\text{NMNCWA} \times 1.25)) + (\text{NMNCWW} \times \text{NMNCWA}) = \text{Net Distribution Fund}$$

*Id.*

Once the Settlement Administrator determines the Non-Manager/Non-Coordinator Workweek Amount, it shall multiply that figure by 1.25 to calculate the Manager/Coordinator Workweek Amount ("MCWA").[6] *Id.*

2.    <u>Individual Settlement Payment</u>

The second step calculates the class member's Individual Settlement Payment. *See id.* ¶ 3.13.4.2. The Individual Settlement Payment to each Non-Manager/Non-Coordinator Class member will be determined by multiplying the total number of weeks the class member worked during the Class Period, rounded up, by the Non-Manager/Non-Coordinator Workweek Amount. *Id.* The Individual Settlement Payment for each Manager/Coordinator Class member will be

---

[5] The reasons for this difference are explained in greater detail below. *See infra* pp. 25-26.

[6] In other words, MCWA = NMNCWA x 1.25. Revised Settlement ¶ 3.13.4.1.

determined by multiplying the total number of weeks the class member worked during the Class Period, rounded up, by the Manager/Coordinator Workweek Amount. *Id.*

### D.   Unclaimed and Uncashed Funds

Any settlement funds remaining in the Net Distribution Fund after disbursing payments to the Monetary Payment Class members will be donated to Legal Aid at Work. *Id.* ¶ 3.13.4.4. The Revised Settlement also requires the Settlement Administrator to transmit any unclaimed funds in the Settlement Fund Account as a result of the failure to cash Individual Settlement Payment checks by the Void Date to the State of California Controller's Office, Unclaimed Property Fund, in accordance with California law regarding such escheatment. *Id.* ¶ 3.13.3.

### E.   Objections and Opt-Outs

Class members who wish to object to the Revised Settlement must submit a written notice of objection to the Court that contains (1) the class member's full name, address, signature, and last four digits of his or her social security number; (2) the case name and number; (3) the basis for the class member's objection; and (4) a statement as to whether the class member intends to appear at the final approval hearing. *Id.* ¶ 3.12.7; *see id.* ¶ 1.24.

Class members may not opt out of the mandatory Prospective Relief Class. *Id.* ¶¶ 1.31, 3.12.6. To opt out of the Monetary Payment Class, class members must submit to the Settlement Administrator a written request for exclusion that contains (1) the class member's full name, address, signature, and last four digits of his or her social security number; and (2) a statement to the effect of

> I wish to exclude myself from the monetary portion of the Settlement in *Roberts v. T.J. Maxx of CA, LLC, Marshalls of CA, LLC, HomeGoods, Inc.*, pending in the United States District Court for the Northern District of California, Case No. 3:13-cv-04731. I understand that by requesting to be excluded from the monetary portion of the Settlement, I will receive no money from the Settlement.

*id.* ¶ 3.12.6; *see id.* ¶ 1.35.

Class members' objections or requests for exclusion must be postmarked within 60 days after the Settlement Administrator mails the Notice of Settlement to class members. *Id.* ¶¶ 1.36,

3.12.6, 3.12.7.

**F.      Attorneys' Fees and Costs, Service Awards, and PAGA Award**

The Revised Settlement provides for a total of up to $40,000 in service awards to Plaintiffs: a maximum of $20,000 to Roberts and $10,000 to each Forney and Mullen. *Id.* ¶¶ 1.37, 3.13.8. It further provides that Class Counsel may recover up to $60,000 in costs and $2.55 million in fees. *Id.* ¶¶ 1.5, 1.6, 3.13.9. Defendants agree not to oppose any applications for Class Counsel's fees and costs or Service Awards up to these amounts. *Id.* ¶¶ 3.13.8, 3.13.9. In addition, if the Court awards less than the full amount requested for the service awards or Class Counsel's fees and costs, the un-awarded amount shall be distributed to Monetary Payment Class members. *Id.* (both).

Pursuant to California Labor Code section 2698, the Revised Settlement also allocates a maximum of $100,000 in PAGA penalties, subject to Court approval. *Id.* ¶¶ 1.26, 3.13.7. The Revised Settlement designates 75% of that amount to the California LWDA and 25% to Monetary Payment Class Members. *Id.* ¶ 1.26.

**G.      Settlement Administrator and Administration Costs**

The parties propose ILYM Group, Inc. ("ILYM Group") serve as Settlement Administrator. *See id.* ¶¶ 1.40, 3.4; Bradley Decl. ¶ 52. The Revised Settlement requires the Settlement Administrator to, among other things,

(1) establish (a) a toll-free telephone number; (b) a website with links to the Notice of Settlement, the Revised Settlement, and other relevant documents; and (c) a post office box for receipt of class members' communications;

(2) receive and review requests for exclusion;

(3) calculate and mail Individual Settlement Payments;

(4) provide weekly status reports to the parties;

(5) provide a due diligence declaration to the Court prior to the final approval hearing;

(6) pay the PAGA Award, Service Awards, Class Counsel Fees and Costs Awards to the appropriate entities; and

1    (7) provide class members, Plaintiffs, and Class Counsel with the appropriate tax

2    documents.

3    Revised Settlement ¶ 3.4.

4    The Settlement Administrator will be paid a maximum of $250,000 from the Total

5    Settlement Amount.  *Id.* ¶¶ 1.39, 3.13.10.  Should the Court award less than this amount, the un-

6    awarded amount shall be distributed to the Monetary Payment Class Members.  *Id.* ¶ 3.13.10.

7    **H.      Release of Claims**

8    The Revised Settlement defines Released Parties as

9    > Defendants T.J. Maxx of CA, LLC, Marshalls of CA, LLC and
10   > HomeGoods, Inc. and their subsidiaries, affiliates and/or parents
     > (including without limitation The TJX Companies, Inc., Marshalls
11   > of MA, Inc. and Newton Buying Company of CA, LLC), employee
     > benefit plans sponsored or maintained by any of the foregoing, their
12   > attorneys, and their respective successors and predecessors in
     > interest; all of their respective officers, directors, employees,
13   > administrators, fiduciaries, trustees, beneficiaries and agents; and
     > each of their past, present and future officers, directors,
14   > shareholders, employees, agents, principals, heirs, representatives,
     > accountants, auditors, consultants, insurers and reinsurers.

15   *Id.* ¶ 1.34.

16   Monetary Payment Class members agree to fully release claims

17

18   > in exchange for the consideration provided by this Settlement
     > Agreement, whether arising at law, in contract or in equity, and
19   > whether for economic or non-economic damages, restitution,
     > injunctive relief, penalties or liquidated damages as specified in
20   > Paragraph 3.8 . . . and including without limitation all Claims that
     > were alleged or that could have been alleged based on the facts
21   > stated in the Second Amended Complaint and Third Amended
     > Complaint from October 10, 2009 through the Response Deadline.
22   > The only exception is for Plaintiffs' causes of action/claims for
     > penalties alleged in *Michael Williams, Craig Davis, and Darla*
23   > *Eblacas, individually as aggrieved employees and on behalf of other*
     > *aggrieved employees, Plaintiffs v. Marshalls of CA, LLC, The TJX*
24   > *Companies, Inc., T.J. Maxx of CA, LLC, HomeGoods, Inc. and Does*
     > *1-100, Defendants* (Superior Court of California, County of Los
25   > Angeles, Case No. 24 BC503806), which is also fully released by
     > Monetary Payment Class Members, but only from October 10, 2012
26   > (i.e., one year prior to the date the Roberts Complaint was originally
     > filed) through the Response Deadline.  This release includes a 1542
27   > Waiver as to the MPC Released Claims only.

     *Id.* ¶ 1.20.
28

10

United States District Court
Northern District of California

Prospective Relief Class members release

> all Class Members of all Claims that were or could have been included in Plaintiffs' Second Amended Complaint and Third Amended Complaint that Defendants or the Released Parties failed to provide compliant wage statements under California Labor Code section 226 or any comparable state or federal law from the beginning of the Class Period through and including June 30, 2017, at which time Defendants shall use Wage Statements in substantially the same form as the Wage Statement Exemplar (Exhibit E to the Settlement Agreement).  Although Defendants have agreed to use new wage statements in substantially the same form as the Wage Statement Exemplar by June 30, 2017, Defendants reserve the right to revise and update their wage statements in the future as Defendants deem appropriate as a result of business considerations, changes in applicable law and/or due to other factors and nothing in this Settlement Agreement requires Defendants to use the Wage Statement Exemplar in perpetuity.

*Id.* ¶ 1.32.

## LEGAL STANDARD

The Ninth Circuit maintains "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (internal quotation marks omitted).  Federal Rule of Civil Procedure 23(e) nonetheless requires courts to approve any class action settlement.  "[S]ettlement class actions present unique due process concerns for absent class members[.]" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see Allen*, 787 F.3d at 1223 ("[T]he district court has a fiduciary duty to look after the interests of those absent class members.").  Where parties reach a settlement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

Preliminary approval of a class action settlement requires a two-step inquiry.  *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 672727, at *12 (N.D. Cal. Feb. 16, 2017).  First, courts must determine if a class exists.  *Staton*, 327 F.3d at 952.  "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Second, courts

consider "whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. Where the parties settle prior to class certification, the Ninth Circuit requires "a more probing inquiry than may normally be required under Rule 23(e)." *Hanlon*, 150 F.3d 1011. At the preliminary approval stage, courts must "determine whether the settlement falls 'within the range of possible approval.'" *Booth v. Strategic Realty Tr., Inc.*, 2015 WL 3957746, at *6 (N.D. Cal. June 28, 2015) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)).

Finally, courts examine "the settlement taken as a whole, rather than the individual component parts . . . for overall fairness." *Hanlon*, 150 F.3d at 1026. Courts cannot "delete, modify or substitute certain provisions. [ ] The settlement must stand or fall in its entirety." *Id.* (internal quotation marks and citation omitted).

## DISCUSSION

### A. Class Certification

Class certification is a two-step process. *See Amchem Prods.*, 521 U.S. at 613. Plaintiffs must first satisfy Rule 23(a)'s four requirements: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4). "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied[.]" *Wal-Mart Stores*, 564 U.S. at 350–51 (internal quotation marks omitted).

If Plaintiffs satisfy Rule 23(a)'s requirements, they must then demonstrate a class action may be maintained under Rule 23(b)(1), (2), or (3). *See Amchem Prods.*, 521 U.S. at 613. Plaintiffs move for certification under Rule 23(b)(3), which is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

1. Rule 23(a)

a. *Numerosity*

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). Plaintiffs estimate there are 82,550 potential class members. Bradley Decl. ¶ 23. Of that, there are approximately 9,187 Manager/Coordinator Class

1    members and approximately 73,363 Non-Manager/Non-Coordinator Class members.  *Id.*

2          Given the size of the class and subclasses, joinder is impracticable.  *See Betorina v.*

3    *Randstad US, L.P.*, 2017 WL 1278758, at *3 (N.D. Cal. Apr. 6, 2017) ("Generally, 40 or more

4    members will satisfy the numerosity requirement." (citing *Collins v. Cargill Mean Sols. Corp.*,

5    274 F.R.D. 294, 300 (E.D. Cal. 2011)); *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d

6    473, 483 (2d Cir. 1995)); *Edwards v. Nat'l Milk Producers Fed'n*, 2014 WL 4643639, at *4 (N.D.

7    Cal. Sept. 16, 2014) ("Although there is no absolute minimum number of plaintiffs necessary to

8    demonstrate that the putative class is so numerous so as to render  joinder impracticable, joinder

9    has been deemed impracticable in cases involving as few as 25 class members[.]"  (internal

10   quotation marks and edits omitted)).

             b.    *Commonality*

12         Rule 23(a)(2) requires the existence of "questions of law or fact common to the class[.]"

13   Fed. R. Civ. P. 23(a)(2).  "[F]or purposes of Rule 23(a)(2) even a single common question will

14   do."  *Wal-Mart Stores*, 564 U.S. at 359 (internal quotation marks and brackets omitted); *see*

15   *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (finding it is not necessary "that every

16   question in the case, or even a preponderance of questions, is capable of class wide resolution.  So

17   long as there is even a single common question, a would-be class can satisfy the commonality

18   requirement of Rule 23(a)(2)." (internal quotation marks omitted)).  "Commonality requires the

19   plaintiff to demonstrate that the class members have suffered the same injury" but "[t]his does not

20   mean merely that they have all suffered a violation of the same provision of law."  *Wal-Mart*

21   *Stores*, 564 U.S. at 349-50 (internal quotation marks omitted).  Rather, "[t]hat common contention

22   . . . must be of such a nature that it is capable of classwide resolution—which means that

23   determination of its truth or falsity will resolve an issue that is central to the validity of each one of

24   the claims in one stroke."  *Id.*  "Whether a question will drive the resolution of the litigation

25   necessarily depends on the nature of the underlying legal claims that the class members have

26   raised."  *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014); *see Parsons*, 754 F.3d

27   at 676 ("[C]ommonality cannot be determined without a precise understanding of the nature of the

28   underlying claims.").

1

2

The Court finds questions about Defendants' wage statements are common to the class:

> whether Defendants' meal period and rest break policies, bag check policies, vacation pay policies, timekeeping and compensation policies (including for the calculation of overtime and employees' regular rate) are compliant with California law; whether Defendants' uniform wage statements are compliant with California law[;] and whether Defendants' opening and closing procedures and policies result in underpayment of wages to employees (among others).

Mot. at 28.  As employees, all class members received or continue to receive wage statements from Defendants.  *Id.*  Plaintiffs contend these wage statements violate the California Labor Code; if the Court were to find this to be true, such a determination would be resolved on a class-wide basis.

          c.     *Typicality*

Rule 23(a)(3) requires the representative parties' claims or defenses be "typical of the claims or defenses of the class[.]"  Fed. R. Civ. P. 23(a)(3).  This "serves to ensure that 'the interest of the named representative aligns with the interests of the class.'"  *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  "[R]epresentative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."  *Parsons*, 754 F.3d at 685 (internal quotation marks omitted).  "'Measures of typicality include whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Torres*, 835 F.3d at 1141) (internal quotation marks omitted).

The Court previously noted several concerns regarding typicality, including that it was not clear how Plaintiffs' positions were similar to those of the class and the lack of evidence that class members were uniformly subject to the security screenings that give rise to Plaintiffs' claims.  Order at 12-13.

Plaintiffs satisfactorily address these concerns in their Motion.  The record shows that Plaintiffs' positions were similar to those held by the class.  Roberts worked at Marshalls as an assistant store manager.  *See* Bradley Decl., Ex. 8 ("Roberts Dep.") at 128:8-11.  Forney worked

14

United States District Court
Northern District of California

1     full-time for T.J. Maxx as a customer service coordinator and a key carrier.  *Id.*, Ex. 9 ("Forney

2     Dep.") at 49:5-24.  Mullen worked at HomeGoods first as a sales associate, then as a customer

3     experience coordinator.  *Id.*, Ex. 10 ("Mullen Dep.") at 40:12-18.  Like class members, Plaintiffs

4     were employed in both manager and non-manager positions.  *See Nielson v. Sports Auth.*, 2012

5     WL 5941614, at *4 (N.D. Cal. Nov. 27, 2012) (noting "[c]ourts have found Plaintiff's theory of

6     typicality acceptable—but only as to the positions that the plaintiff actually held" and finding

7     "[p]laintiff ha[d] failed to establish that her claims are typical of those of the class" where she

8     "fail[ed] to specify what position or positions she held while employed by [d]efendant.").

9         In addition, Plaintiffs have suffered the same injuries as class members, as discussed

10    below.

                               i.     Off-the-Clock Claims

12        Plaintiffs argue their off-the-clock claims are typical of the class because a "generally

13    applicable security parcel (i.e., bag check) policy, is shared amongst each of Defendants' non-

14    exempt retail store employees regardless of position or shift" and because "Defendants' common

15    policies related to opening and closing procedures necessitated off-the-clock work."  Mot. at 29.

16        As to the uniform applicability of Defendants' security parcel policy, Plaintiffs contend

17    "documents [Defendants produced during discovery] make no distinction between job positions or

18    shifts, but rather make clear that all employees, regardless of position could be subject to a

19    security bag, parcel or jacket check."  Mot. at 30 (citing Bradley Decl., Ex. 4).  Roberts' testimony

20    also indicates all employees at Marshalls, regardless of job title, are subject to bag checks.

21    Roberts testifies that, as an assistant manager, she "had to conduct bag checks every day" on

22    associates, managers, and loss prevention employees.  Roberts Dep. at 128:5-7, 330:7-20.

23    Roberts' own bags were also searched: at the end of her shift, "typically [she] would always have

24    [her] bags checked by a manager.  If there was no manager available, then [she] would have an

25    associate check [her] bag. [] It was required."  *Id.* at 247:19-248:3.

26        In addition, two documents titled "Additional Loss Prevention Responsibilities Purse and

27    Parcel Procedure" state that "Members of Management and LP Associates may inspect the

28    contents of . . . bags, briefcases, [and] handbags . . . to identify and deter Associate dishonesty."

United States District Court
Northern District of California

1    Bradley Decl., Ex. 4 at 161, 165.  They also state that "[p]urse and parcel inspections should be

2    done on a regular but random basis so that all Associates['] purses are checked consistently."  *Id.*

3    (both).  Another document titled "Security Checks (Bag Inspections)" provides that "HomeGoods

4    requires Associates to allow Store Management and/or Loss Prevention personnel to conduct a

5    security check upon entering or leaving the store."  *Id.* at 164.

6           At the hearing, counsel for Defendants clarified that "at TJX, every employee is referred to

7    as an 'associate' from the person who is first hired at the lowest-level position, all the way up

8    through the executive team."  July 13, 2017 Oral Argument at 10:25.  Amy Fardella, Chief Human

9    Resources Officer at The TJX Companies, Inc., further explains that "[i]n addition to having

10   specific job titles, all T.J. Maxx, Marshalls and HomeGoods employees are referred to as

11   'Associates' in T.J. Maxx, Marshalls and HomeGoods' policies, including in 'Marmaxx' policies,

12   which are policies applying to T.J. Maxx and Marshalls stores."  Fardella Decl. ¶ 3, Dkt. Nos. 86-

13   87.[7]  The term "Associates" therefore "refers generally to all company employees, regardless of

14   whether those employees are in a manager or coordinator position, a non-manager or non-

15   coordinator position or any other position with T.J. Maxx, Marshalls or HomeGoods."  *Id.*

16          As to Plaintiffs' claims arising from Defendants' opening and closing policies, there is

17   evidence that such policies applied to all class members, regardless of their positions.  *See* Bradley

18   Decl., Ex. 4 at 162-63; *see also* Mot. at 30 ("The opening and closing policies produced by

19   Defendants' also appear to apply to all Associates working an opening and closing shift[.]" (citing

20   *id.*)).

21                              ii.      Non-Compliant Meal and Rest Breaks

22          Plaintiffs also assert understaffing and bag checks reduced meal and rest time breaks below

23   the minimum thresholds required under California law.  Mot. at 30.  This claim is typical of the

24   class because, as discussed above, Plaintiffs were subject to the same bag check and policies as

25   other class members which allegedly reduced the amount of time spent during meal and rest

26

27   ───────────────────
     [7] Although Defendants twice filed the Fardella Declaration, there appears to be no substantive
     difference between the two Declarations.  *Compare* Dkt. No. 86 *with* Dkt. No. 87.  For purposes of
28   this Order, citations to the Fardella Declaration refer to both Docket Nos. 86 and 87.

1    breaks.

2                        iii.    Derivative and Direct Wage Statement Claim

3          Finally, Plaintiffs contend Defendants issued allegedly noncompliant wage statements to

4    class members.  Their claims arising from this conduct are typical of the class, as Defendants

5    provided the same wage statement to class members in substantially the same format throughout

6    the Class Period.  *See* Bradley Decl., Ex. 7 (exemplar wage statement issued to Mullen).

7                        iv.    Summary

8          Based on the foregoing, the Court finds Plaintiffs' claims are typical of the class: Plaintiffs

9    were subject to the same conduct as other class members, and Plaintiffs do not pursue unique or

10   personalized claims.  As such, the Court finds Plaintiffs satisfy Rule 23(a)(3).

11                  d.     *Adequacy of Representation*

12         Rule 23(a)(4) requires that the representative parties "fairly and adequately protect the

13   interests of the class."  Fed. R. Civ. P. 23(a)(4).  "In making this determination, courts must

14   consider two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest

15   with other class members and (2) will the named plaintiffs and their counsel prosecute the action

16   vigorously on behalf of the class?'"  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031

17   (9th Cir. 2012) (internal quotation marks omitted).  "This requirement is rooted in due-process

18   concerns—'absent class members must be afforded adequate representation before entry of a

19   judgment which binds them.'"  *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1165 (9th

20   Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1020).

21         Plaintiffs' interests align with those of class members.  Like class members, Plaintiffs held

22   both manager and non-manager positions.  There is no evidence that Plaintiffs or their counsel

23   have a conflict of interest with the class.  *See* Roberts Decl. ¶ 16, Dkt. No. 70-6; Mullen Decl. ¶

24   16, Dkt. No. 70-7; Forney Decl. ¶ 16, Dkt. No. 70-8; *see id.* (all).  Counsel for Plaintiffs Marcus

25   Bradley further declares

26                    there is no evidence of antagonism between Plaintiffs' interests and
                     those of the Settlement Class.  Plaintiffs have litigated this case in
27                    good faith and the interests of Plaintiffs are aligned with those of the
                     Settlement Class as they both share a common interest in
                     challenging the legality of Defendants' policies and procedures.

28

United States District Court
Northern District of California

1   Bradley Decl. ¶ 29; *see id.* ¶ 30 ("[T]h[e] Named Plaintiffs will fairly and adequately protect the

2   class'[] interests, [and] they have no antagonistic interests to the class[.]").

3                e.   *Summary*

4       The Court finds Plaintiffs have satisfied Rule 23(a)'s prerequisites.

5          2.   Rule 23(b)(2)

6       Plaintiffs seek to certify the Prospective Relief Class under Rule 23(b)(2).  Certification

7   under this Rule is appropriate where "the party opposing the class has acted or refused to act on

8   grounds that apply generally to the class, so that final injunctive relief or corresponding

9   declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The

10  Supreme Court explains that

11          [t]he key to the (b)(2) class is the indivisible nature of the injunctive
        or declaratory remedy warranted—the notion that the conduct is
12          such that it can be enjoined or declared unlawful only as to all of the
        class members or as to none of them. [ ] In other words, Rule
13          23(b)(2) applies only when a single injunction or declaratory
        judgment would provide relief to each member of the class. It does
14          not authorize class certification when each individual class member
        would be entitled to a *different* injunction or declaratory judgment
15          against the defendant.   Similarly, it does not authorize class
        certification when each class member would be entitled to an
16          individualized award of monetary damages.

17  *Wal-Mart Stores*, 564 U.S. at 360-61 (emphasis in original; internal quotation marks and citation

18  omitted).  "These requirements are unquestionably satisfied when members of a putative class

19  seek uniform injunctive or declaratory relief from policies or practices that are generally

20  applicable to the class as a whole."  *Parsons*, 754 F.3d at 688.

21      The Court finds the Prospective Relief Class satisfies Rule 23(b)(2).  This Class seeks

22  injunctive relief, namely, modifications to Defendants' wage statements to comply with California

23  Labor Code section 226.  Revised Settlement ¶ 3.13.6; Bradley Decl. ¶ 43.  This satisfies Rule

24  23(b)(2)'s requirement that "the primary relief sought is declaratory or injunctive."  *Rodriguez v.*

25  *Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (internal quotation marks omitted).  Moreover, these

26  claims apply to all Prospective Relief Class members, and the prospective relief addressing the

27  allegedly deficient wage statements resolves those claims for all class members.  *See Parsons*, 754

28  F.3d at 688; *Wal-Mart Stores*, 564 U.S. at 360 (Rule 23(b)(2) "does not authorize class

United States District Court
Northern District of California

18

1    certification when each individual class member would be entitled to a different injunction or

2    declaratory judgment against the defendant.").  Finally, Defendants' uniform use of the allegedly

3    noncompliant wage statements "constitute shared grounds" for all members of the Prospective

4    Relief Class and demonstrate Defendants acted in ways that apply generally to the Class.  *Parsons*,

5    754 F.3d at 688.

6          As such, the Court finds the Prospective Relief Class satisfies Rule 23(b)(2)'s requirements

7    for purposes of settlement.

8          3.    Rule 23(b)(3)

9          Plaintiffs seek to certify the Monetary Payment Class under Rule 23(b)(3), which requires

10   the Court to find that: (1) "the questions of law or fact common to class members predominate

11   over any questions affecting only individual members," and (2) "a class action is superior to other

12   available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P.

13   23(b)(3).  The Court finds Plaintiffs show certification under Rule 23(b)(3) is appropriate.

14         "Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."

15   *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).  The Rule 23(b)(3) "analysis presumes

16   that the existence of common issues of fact or law have been established pursuant to Rule

17   23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3)."

18   *Hanlon*, 150 F.3d at 1022.  Rather, "[t]he 'predominance inquiry tests whether proposed classes

19   are sufficiently cohesive to warrant adjudication by representation.'"  *Tyson Foods, Inc. v.*

20   *Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting *Amchem Prods.*, 521 U.S. at 623).  "Common

21   issues predominate over individual issues when the common issues represent a significant aspect

22   of the case and they can be resolved for all members of the class in a single adjudication."

23   *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1182 (9th Cir. 2015), *cert. dismissed sub nom. First*

24   *Am. Fin. Corp. v. Edwards*, 136 S. Ct. 1533 (2016) (internal quotation marks omitted).  "[T]he

25   factors relevant to assessing superiority include '(A) the class members' interests in individually

26   controlling the prosecution or defense of separate actions; (B) the extent and nature of any

27   litigation concerning the controversy already begun by or against class members; (C) the

28   desirability or undesirability of concentrating the litigation of the claims in the particular forum;

United States District Court
Northern District of California

19

1    and (D) the likely difficulties in managing a class action.'"   *Wolin v. Jaguar Land Rover N. Am.*,

2    LLC, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)(A)-(D)).

3          The Court finds Plaintiffs satisfy Rule 23(b)(3).  Plaintiffs' claims are based on the

4    allegations they were subject to the same practices or policies imposed by Defendants: (1) bag

5    check policies and opening and closing procedures; (2) meal and rest break policies; (3) failure to

6    pay waiting time penalties and accrued vacation benefits; and (4) using noncompliant wage

7    statements.  The Court can more efficiently resolve whether such practices and policies violate the

8    applicable laws through a class action than on a case-by-case basis.  *See* Fed. R. Civ. P. 23(b)(3)

9    (requiring finding "that a class action is superior to other available methods for fairly and

10   efficiently adjudicating the controversy").  Additionally, the Revised Settlement eliminates the

11   manageability problems the Court previously identified.  *See* Fed. R. Civ. P. 23(b)(3)(D)

12   (requiring consideration of "the likely difficulties in managing a class action").  As such, the Court

13   finds Rule 23(b)(3)'s requirements are satisfied for settlement purposes.

14         4.      Summary

15         Based on the foregoing analysis, the Court finds Plaintiffs have met their burden under

16   Rules 23(b)(2) and (3).  Accordingly, for purposes of preliminary approval, the Court certifies the

17   proposed classes as defined above.

18   **B.      Appointment of Class Counsel**

19         Throughout this litigation, Plaintiffs have been represented by Bradley and Kiley L.

20   Grombacher of Bradley/Grombacher LLP; Shaun Setareh of the Setareh Law Group; Samuel A.

21   Wong and Kashif Haque of the Aegis Law Firm, P.C.; Scott B. Cooper of the Cooper Law Firm;

22   and Roger R. Carter of the Carter Law Firm.  Bradley Decl. ¶ 9.  Bradley declares that "Class

23   Counsel employ seasoned class action attorneys who regularly litigate wage and hour claims

24   through certification and on the merits, and have considerable experience settling wage and hour

25   class actions."  *Id.*  Bradley, for instance, has practiced law since 1994 and, since 2000, has

26   "spen[t] most of [his] time representing workers in wage and hour matters."  *Id.* ¶ 37; *see id.* ¶¶

27   37(a)-(k).  Nothing suggests Bradley and the other Class Counsel have not and will not continue to

28   vigorously litigate this matter on behalf of the class.  As such, the Court APPOINTS the

United States District Court
Northern District of California

20

aforementioned attorneys as Class Counsel for purposes of settlement only.

**C.      Preliminary Fairness Determination**

The Court next considers the Revised Settlement to determine whether it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  The Ninth Circuit has identified eight factors courts should consider in evaluating whether a class action settlement is fair, adequate, and reasonable:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citation omitted). But where, as here, "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  As noted, settlements negotiated prior to class certification "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth*, 654 F.3d at 946.  This "more exacting review . . . ensure[s] that class representatives and their counsel do not secure a disproportionate benefit 'at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1027).

"Collusion may not always be evident on the face of a settlement, and courts therefore must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  *In re Bluetooth*, 654 F.3d at 947.  Subtle signs of collusion include

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
> (2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from

> class funds, which carries "the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* (internal quotation marks and citations omitted).

"[T]he preliminary approval stage [i]s an 'initial evaluation' of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties." *In re High-Tech Employee Antitrust Litig.*, 2013 WL 6328811, at *1 (N.D. Cal. Oct. 30, 2013).  A full analysis of the fairness factors is therefore unnecessary at this time; indeed, "some of these 'fairness' factors cannot be fully assessed until the Court conducts the final approval hearing[.]" *Lusby*, 297 F.R.D. at 412.  At this stage, "[p]reliminary approval of a settlement and notice to the class is appropriate if '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval.'" *Johnson v. Quantum Learning Network, Inc.*, 2016 WL 4529607, at *1 (N.D. Cal. Aug. 30, 2016) (quoting *In re Tableware*, 484 F. Supp. 2d at 1079) (first brackets added).  Ultimately, the "decision to approve or reject a settlement is committed to the sound discretion of the trial judge[.]" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000), *as amended* (June 19, 2000) (internal quotation marks omitted).

    1.   <u>Settlement Process</u>

The Court first considers "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).  A settlement is entitled to "[a]n initial presumption of fairness . . . if the settlement is recommended by class counsel after arm's-length bargaining." *Id.* (internal quotation marks omitted).  The Court is satisfied the Settlement is the product of serious, informed, non-collusive negotiations.  The parties negotiated the Revised Settlement under the guidance of two mediators.  Revised Settlement ¶ 2.3; Mot. at 35; Bradley Decl. ¶ 40.  The use of mediators, though not dispositive, supports a finding that the Revised Settlement is not the product of collusion.  *In re Bluetooth*, 654 F.3d at 948; *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012).

"For the parties 'to have brokered a fair settlement, they must have been armed with sufficient information about the case to have been able to reasonably assess its strengths and value.'" *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *8 (N.D. Cal. Oct. 27, 2015) (quoting *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007)).  Bradley declares "the [p]arties each took their obligations in discovery extremely seriously and worked diligently to provide one another with sufficient information and documentation so as to be adequately informed prior to mediation."  Bradley Decl. ¶ 13.  The parties engaged in written discovery, the production of documents, and depositions.  *Id*. ¶¶ 13-14.  As a result, the parties were fully informed to evaluate the strengths and weaknesses of their positions and weigh settlement offers.  Accordingly, the Court finds this factor favors preliminary approval.

      2.     <u>Presence of Obvious Deficiencies</u>

The Court next considers whether the Settlement contains obvious deficiencies.  The Court finds none at this point.

The first *Bluetooth* red flag is whether counsel receive a disproportionate distribution of the settlement, or whether the class receives no monetary distribution but class counsel are amply rewarded.  654 F.3d at 947.  The Ninth Circuit has "established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."  *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

The Revised Settlement exceeds this benchmark: it designates no more than $2,550,000 in attorneys' fees, plus $60,000 in costs; not including costs, this represents 30% of the Total Settlement Amount .  Revised Settlement ¶¶ 1.5-1.6, 3.13.9.  While higher than the benchmark amount, such a percentage is not uncommon in wage and hour class action settlements such as this.  *See Ruch v. AM Retail Grp., Inc.*, 2016 WL 1161453, at *12 (N.D. Cal. Mar. 24, 2016) (finding as reasonable fee award totaling no more than 30% of the settlement amount in wage and hour class action settlement); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *28 (N.D. Cal. Apr. 1, 2011), *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011) (approving attorneys' fee of 42% of common fund in wage and hour class action); *Hightower v. JPMorgan Chase Bank, N.A.*, 2015 WL 9664959, at *11 (C.D. Cal. Aug. 4, 2015) ("[A]n award of 30% is

23

consistent with awards granted in similar complex [wage and hour] litigation."); *Stevenson v. Dollar Tree Stores, Inc.*, 2011 WL 4928753, at *5 (E.D. Cal. Oct. 17, 2011) ("[I]n California, where wage and hour class actions have settled prior to trial for millions of dollars, it is not uncommon for an attorneys' fee award to be in the realm of 25% to 30% of the settlement and, thus, in excess of $ 1 million." (internal quotation marks omitted)).  At this point, the Court finds the proposed attorneys' fees do not suggest the presence of collusion.

The second *Bluetooth* factor asks whether the parties negotiated a 'clear sailing' agreement for the payment of attorneys' fees separate and apart from class funds.  654 F.3d 947.  A clear sailing agreement "is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling." *Schuchardt v. Law Office of Rory W. Clark*, 2016 WL 232435, at *9 (N.D. Cal. Jan. 20, 2016) (internal quotation marks omitted).  Concerns about collusion due to the existence of a clear sailing provision are reduced where the agreement lacks a reversionary or "kicker provision."  *In re Bluetooth*, 654 F.3d at 947 ("indicia of possible implicit collusion" includes "a 'kicker': all [attorneys'] fees not awarded would revert to defendants rather than be added to the cy pres fund or otherwise benefit the class").  Under the terms of the Revised Settlement, "Defendants agree not to oppose any application by Class Counsel for a Class Counsel Fees Award not to exceed Two Million, Five Hundred and Fifty Thousand Dollars ($2,550,000)[.]"  Revised Settlement ¶ 3.13.9.  But concerns over collusion are mitigated as un-awarded Class Counsel fees shall not revert to Defendants but shall instead be paid to the Monetary Payment Class.  *Id.* ("In the event that the Court awards less than the full amount requested for the Class Counsel Fees Awards and Class Counsel Costs Award, the un-awarded amount will be made available for distribution to Class Members as part of the Net Distribution Fund.").  Thus, the Court is satisfied at this point that there is no indication of collusion under this factor.

The final *Bluetooth* factor considers whether the Settlement provides for un-awarded fees to revert to Defendants instead of class members.  654 F.3d at 947.  As noted, un-awarded Class Counsel fees and costs shall be distributed to Monetary Payment Class members.  Revised Settlement ¶ 3.13.9.  Similarly, if the Court awards less than the full requested amount for

United States District Court
Northern District of California

24

Plaintiffs' service awards, the un-awarded amount shall be distributed to Monetary Payment Class members. *Id.* ¶ 3.13.8.  The Revised Settlement further provides that "[i]f there are any settlement funds remaining in the Net Distribution Fund after disbursing payments to Monetary Payment Class Members due to rounding the workweek values to the nearest cent, those funds will be donated to Legal Aid at Work." *Id.* ¶ 3.13.4.4.  The Settlement Administrator also shall transmit unclaimed funds—i.e., funds resulting from the failure to cash an Individual Settlement Payment—to the State of California Controller's Office, Unclaimed Property Fund.  *Id.* ¶ 3.13.3. Because there is no reversion, this factor does not suggest collusion.

In sum, the lack of *Bluetooth* factors and of other obvious deficiencies favors preliminary approval.

### 3.   Preferential Treatment

The third factor asks whether the Revised Settlement affords preferential treatment to any class members.  The Court found the First Settlement afforded certain class members preferential treatment, as that Settlement did not distinguish between class members who worked full and part time, who held manager and non-manager positions, and who were current versus former employees.  Order at 22-23.  As such, the First Settlement awarded benefits without accounting for differences in pay, the number of hours worked, or who was entitled to recover under specific claims.  *Id.*

The Revised Settlement addresses many of these concerns.  First, by creating Manager/Coordinator and Non-Manager/Non-Coordinator subclasses and using different formulas to calculate the Individual Settlement Payments for each subclass, the Revised Settlement takes into account the difference in pay.  Bradley declares that

> [t]he median final hourly pay rate (i.e., the hourly rate at the date of separation, or for current employees, the hourly rate at the date the Class Period cut off on 8/10/16) for employees who never held a manager position and never held a coordinator position while working in non-exempt positions at T.J. Maxx, Marshalls or HomeGoods branded stores in California was $9.00.  The median final hourly pay rate for non-exempt employees with a manager job title or coordinator job title at separation or as of the date the Class Period cut off on August 10, 2016 was $11.98.

Bradley Decl. ¶ 24; *see* Mot. at 18.  In other words, the pay rate for managers or coordinators was

United States District Court
Northern District of California

25% higher than that for non-managers or non-coordinators.

The Revised Settlement reflects this difference. *See* Bradley Decl. ¶ 25 ("[T]he collective median pay rate for employees holding manager or coordinator positions under the Settlement Agreement is 25% higher than the median hourly pay for employees who never held a manager position or a coordinator position."). Specifically, the Revised Settlement assigns a workweek value to the Manager/Coordinator Class that is 25% higher than that of the Non-Manager/Non-Coordinator Class. *See* Revised Settlement ¶¶ 3.13.4.1. Moreover, distinguishing between Managers/Coordinators and Non-Managers/Non-Coordinators takes into account whether a class member worked full or part time: Manager/Coordinator Class members generally worked full time, whereas Non-Manager/Non-Coordinator Class members generally worked part time. Mot. at 2 n.4, 16; *see id.* at 7-8 (listing part-time, non-exempt positions).

At the hearing, the Court noted the Revised Settlement does not differentiate between current and former employees. Counsel for Defendants argued that the Revised Settlement does not afford preferential treatment based on Class members' employment status for a number of reasons. *See* July 13, 2017 Oral Argument at 10:29-30. In the retail business, it "is very common to have short-term seasonal employees who will be hired and fired . . . many times[.]" *Id.* at 10:29-30. Only approximately 18% of the Class consists of employees who remained employed through the end of the Class Period. *Id.* at 10:31-32. More than 67,000 class members—roughly 82% of the Class—are former employees who had "separated at some point during the Class Period." *Id.* at 10:30-32. There are some material distinctions between former and current employees. For example, long-term employees would be subject to some of Defendants' allegedly illegal practices and policies for a longer period of time; the chances they were actually subjected to bag searches thus would be higher than that of a former, seasonal employee would have been subjected to a random search during the short term of employment. *Id.* at 10:30. Former employees, however, may be entitled to waiting time penalties to which current employees are not, as waiting time penalties apply only to terminated employees. *See* Cal. Lab. Code § 201(a) ("If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."); Cal. Labor Code § 227.3 ("[W]henever a contract of employment or

employer policy provides for paid vacations, and an employee is terminated without having taken

off his vested vacation time, all vested vacation shall be paid to him as wages. . . .").

While the Revised Settlement may not perfectly address these distinctions, "[t]he relevant

standard . . . is not whether the settlement is one which the court . . . considers as ideal, but

whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing

statute." *Arizona v. City of Tucson*, 761 F.3d 1005, 1021 (9th Cir. 2014) (citation omitted).  All

things considered, that the Revised Settlement does not distinguish between current and former

employees does not render it unfair or unreasonable.

Finally, the Revised Settlement allocates a maximum of $40,000 in service awards for the

named Plaintiffs: Roberts shall receive no more than $20,000, and Forney and Mullen shall each

receive no more than $10,000.  Revised Settlement ¶ 3.13.8.  Service or incentive "awards are

discretionary . . . , and are intended to compensate class representatives for work done on behalf of

the class, to make up for financial or reputational risk undertaken in bringing the action, and,

sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W.*

*Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  Nonetheless, "district courts must be vigilant

in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class

representatives." *Radcliffe*, 715 F.3d at 1164.

The Court notes that while Forney's and Mullen's proposed service awards fall within the

typical range, albeit on the high side, Roberts' proposed award is twice the usual amount.  *See*

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) ("Incentive awards

typically range from $2,000 to $10,000." (collecting cases)).  A service award of $20,000 is four

times greater than the presumptively reasonable $5,000 award.  *See Gaudin v. Saxon Mortg.*

*Servs., Inc.*, 2015 WL 7454183, at *10 (N.D. Cal. Nov. 23, 2015) ("Many courts in the Ninth

Circuit have also held that a $5,000 incentive award is 'presumptively reasonable.'" (collecting

cases)); *Burden v. SelectQuote Ins. Servs.*, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013)

("Courts in this district frequently award $5,000 incentive awards, often in larger settlements than

this one." (collecting cases)).  The Court previously noted "the Roberts Declaration is nearly

identical to the Mullen and Forney Declarations and does not offer facts that justify an incentive

27

award that is twice that of Mullen's and Forney's." Order at 24; *compare* Roberts Decl. ¶¶ 13-14 *with* Mullen Decl. ¶¶ 13-14 *and* Forney Decl. ¶¶ 13-14. That remains the case: based on the present record, the only significant difference in Plaintiffs' participation is that Roberts declares she sat for two days of deposition, whereas Mullen and Forney only sat for one-day depositions. Roberts Decl. ¶ 14; Mullen Decl. ¶ 14; Forney Decl. ¶ 14; *see also* Bradley Decl. ¶ 31 (describing Plaintiffs' participation in litigation, but not distinguishing Roberts' contribution).

In any event, a $10,000 incentive award, let alone a $20,000 award, is disproportionate to class members' anticipated recovery. *Smith v. Am. Greetings Corp.*, 2016 WL 2909429, at *10 (N.D. Cal. May 19, 2016) ("[T]o determine the reasonableness of a requested incentive payment, courts consider the proportionality between the incentive payment and the range of class members' settlement awards." (citing *Burden v. SelectQuote Ins. Servs.*, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013)). By Plaintiffs' estimate, class members will receive an average of $66.93 (Mot. at 21), a miniscule fraction of the proposed $10,000 and $20,000 awards. *See Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 463 (E.D. Cal. 2013) (finding $7,5000 incentive award unreasonably high where class members would receive an average of $65.79).

Nonetheless, the Court does not find the service awards, on their own, prohibit preliminary approval. The Court will undertake a more thorough analysis when Class Counsel file a motion for attorneys' fees and costs. At that time, Class Counsel should present or be prepared to offer specific evidence of Plaintiffs' efforts to justify the requested service awards.

4.    <u>Range of Possible Approval</u>

Finally, the Court must consider whether the proposed Settlement falls within the range of possible approval. In making this determination, courts consider the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

United States District Court
Northern District of California

a.   *Strength of Plaintiffs' Case; Risk, Expense, Complexity, and Likely*

*Duration of Further Litigation; and Risk of Maintaining Class Action Status*

Defendants indicate they intend to vigorously contest class certification and Plaintiffs' claims on the merits if the Revised Settlement is not approved.  Mot. at 37-38, 41; *see id.* at 38-41 (summarizing Defendants' defenses).  Plaintiffs "were cautiously optimistic about the chances of prevailing at certification on their claims as well as at trial"; however, they recognize significant legal and factual hurdles may preclude full or any recovery on their claims.  *Id*. at 42.  They also recognize some courts have declined to find wage and hour actions amenable to class action status. *Id.* at 43.  In particular, Plaintiffs acknowledge that courts have found that claims similar to those Plaintiffs asserted in this litigation—meal and rest period and off-the-clock violations—raise too many individualized issues.  *Id.* (collecting cases).  Finally, prolonged litigation risks delaying resolution; by Plaintiffs' estimate, further litigation and the inevitable appeals could add at least four years before the case is resolved.  *Id.* at 42.  Under these circumstances, the Court finds these factors favor preliminary approval of the Revised Settlement.

b.   *Amount Offered in Settlement*

"To evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *Harris*, 2011 WL 1627973, at *9 (internal quotation marks omitted).

The Revised Settlement offers both injunctive and monetary relief.  The injunctive relief— that is, the modification of wage statements—furthers the purpose of California Labor Code section 226 by providing employees with "additional information, which Plaintiffs believe will reduce the risk of confusion and better allow employees to evaluate their pay and identify any issues or concerns."  Mot. at 34; *see Naranjo v. Spectrum Sec. Servs., Inc.*, 172 Cal. App. 4th 654, 668 (2009) ("Labor Code section 226 obliges employers to provide their employees with records of their earnings and deductions, and imposes penalties upon employers who knowingly and intentionally fail to supply the records.").  Plaintiffs contend "[t]his change comes at a significant cost to Defendants and provides a substantial benefit to current employee Class Members and

29

1   former employee Class Members who may be rehired by Defendants (e.g., seasonal employees

2   who often are rehired every holiday season, etc.)."  Mot. at 30.

3           Plaintiffs also estimate each class member will receive an average of $66.93.  *Id.* at 21.

4   The estimated $5,525,000 Net Distribution Fund is also consistent with Plaintiffs' estimate that

5   "the estimated damages involved in the California claims will exceed $5,000,000[.]"  SAC ¶ 12.

6   That said, the Court cannot fully evaluate the monetary amount offered in settlement until the

7   claims procedure is complete.  *See Harris*, 2011 WL 1627973, at *15.

8                   c.       *Extent of Discovery Completed and Stage of the Proceedings; Experience*

9                            *and Views of Counsel*

10          The parties thoroughly investigated and researched Plaintiffs' claims, Defendants' defenses

11  thereto, and the developing case law.  Mot. at 37.  The parties engaged in formal and informal

12  discovery, including interrogatories, requests for admission, and depositions.  *Id.*; Bradley Decl. ¶

13  13.  Bradley declares that "the breadth of discovery available to the Parties permitted a thorough

14  and detailed analysis of the merits of Plaintiffs' claims and Defendants' defenses as well as

15  Defendants' exposure for damages."  Bradley Decl. ¶ 12.  The Court discusses Bradley's

16  qualifications and experience above.  *See supra* p. 21.  Based on his experience as a class action

17  litigator, Bradley declares the Revised Settlement "is a fair and adequate compromise of the

18  monetary relief claims that Plaintiffs and the Class Members have raised in this case."  *Id.* ¶ 39.

19  The Court therefore finds this factor favors preliminary approval.

20                  d.       *Presence of a Governmental Participant; Reaction of Class Members*

21          No government entity participated in settlement negotiations, and Class members have not

22  had an opportunity to review or comment on the Revised Settlement.  As such, these factors are

23  neutral.

24                  e.       *Summary*

25          Based on the foregoing factors, the Court finds the Revised Settlement falls within the

26  range of possible approval.

27          5.      <u>Preliminary Fairness Summary</u>

28          Having considered the nature of the settlement negotiations, whether there are any obvious

United States District Court
Northern District of California

deficiencies, whether the Revised Settlement affords certain class members preferential treatment, and whether the Settlement falls within the range of possible approval, the Court finds the Settlement is fair, reasonable, and adequate for purposes of preliminary approval.  The Court therefore GRANTS Plaintiffs' Motion for Preliminary Approval.

**D.      Notice Plan**

         1.      <u>Method of Providing Notice</u>

         Rule 23(e) provides that "the court may direct appropriate notice to the class" certified under Rule 23(b)(2).  Fed. R. Civ. P. 23(e)(2)(A).  Notice is mandatory for any class certified under Rule 23(b)(3): "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(e)(2)(B).  "[T]he express language and intent of Rule 23(c)(2) leave no doubt that individual notice must be provided to those class members who are identifiable through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974).

         Within fifteen days following preliminary approval, Defendants shall provide the Settlement Administrator with a list of class members' names, last known addresses, social security numbers, and weeks of employment.  Revised Settlement ¶¶ 1.7, 3.12.2.  Defendants shall also identify whether the class member worked in a manager or coordinator position.  *Id.* ¶ 1.7.  The Settlement Administrator will update former employee class members' addresses through a national change of address search and a skip trace.  *Id.* ¶ 3.12.3.  Using First Class U.S. Mail, the Settlement Administrator shall mail to class members a Notice of Settlement via First Class U.S. Mail.  *Id.*  Notices that are returned as undeliverable shall be re-mailed to the forwarding address, if one is provided.  *Id.* ¶ 3.12.4.  If there is no forwarding address, "the Settlement Administrator shall make reasonable efforts to obtain an updated mailing address" and to resend the Notice.  *Id.*

         The Court finds mailed notice to be the best notice practicable in this case, as it provides actual notice to all class members using their most recent addresses.  As such, the Court approves the method of notice as set forth in the Revised Settlement.

United States District Court
Northern District of California

2.      Contents of Notice

Rule 23(c)(2)(B) requires that

> the notice must clearly and concisely state in plain, easily
> understood language:
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an
> attorney if the member so desires;
> (v) that the court will exclude from the class any member who
> requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule
> 23(c)(3).

*Id.*

The proposed Notice of Settlement complies with these requirements.  *See* Revised

Settlement, Ex. A (proposed Notice of Settlement).  In plain English, it describes the basis for the

lawsuit; defines the classes and subclasses; explains class members' rights under the Revised

Settlement, including their rights to object and to opt out; and explains how class members can

obtain more information, including the precise terms and conditions of the Revised Settlement.

The Notice also indicates the time and place of the final approval hearing.

3.      Costs of Notice and Settlement Administration

The Revised Settlement provides that the Settlement Administrator will be paid from the

Total Settlement Amount, in an amount not to exceed $250,000.  Revised Settlement ¶¶ 1.39,

3.13.10.  At the hearing, counsel for both parties explained they had obtained five bids for notice

administration and selected ILYM Group due to its price, the services provided, and the parties'

prior experience with that vendor.  July 13, 2017 Oral Argument at 10:33.  Sean Hartranft, Senior

Vice President of Sales for ILYM Group, explains the administration of the Revised Settlement

will cost $229,151.21.  Hartranft Decl. ¶ 9, Dkt. No. 85.  This figure takes into account costs of

mailing the Notice to class members; fielding correspondence and inquiries from class members;

and distributing class members' payments.  *Id.* ¶¶ 3-8 & Ex. B.  The Revised Settlement allocates

$250,000 in Settlement Administration costs; the roughly additional $21,000 provides a buffer if

"something goes amiss during the process."  July 13, 2017 Oral Argument at 10:34.  Based on

counsels' and Hartranft's representations, the Court finds the costs of notice are reasonable.

**CONCLUSION**

Based on the foregoing analysis, the Court **GRANTS** the Motion for Preliminary Approval as follows:

(1) This Order incorporates by reference the definitions in the Revised Settlement Agreement.  All terms defined therein shall have the same meaning in this Order as set forth in the Revised Settlement Agreement.

(2) The Settlement Class is conditionally certified for purposes of settlement, defined as: "All current and former non-exempt employees who worked at a T.J. Maxx, Marshalls or HomeGoods branded retail store in the State of California during the Class Period." The Settlement Class consists of two subclasses: the Monetary Relief Class and the Prospective Relief Class.

(3) For purposes of settlement, the Monetary Relief Class is conditionally certified pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3).  The Monetary Relief Class is defined as "all current and former non-exempt employees who worked at a T.J. Maxx, Marshalls or HomeGoods branded retail store in the State of California from October 10, 2009 through and including August 10, 2016, who do not submit a timely Request for Exclusion (i.e., opt-out), and therefore, are entitled to receive an Individual Settlement Payment."  The Monetary Relief Class if further divided into the Manager/Coordinator Monetary Payment Class and the Non-Manager/Non-Coordinator Payment Class:

   a. The Manager/Coordinator Monetary Payment Class is defined as "all current former non-exempt employees who worked at a T.J. Maxx, Marshalls or HomeGoods branded retail store in the State of California during the Class Period, are members of the Monetary Payment Class, and at any point during the Class Period held a non-exempt manager title or non-exempt coordinator title."

   b.  The Non-Manager/Non-Coordinator Payment Class is defined as "all current

33

and former non-exempt employees who worked at a T.J. Maxx, Marshalls or HomeGoods branded retail store in the State of California during the Class Period, are members of the Monetary Payment Class, and never held a manager title or a coordinator title during the Class Period."

(4) For purposes of settlement, the Prospective Relief Class is conditionally certified pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2).  The Prospective Relief Class is defined as "all non-exempt employees working at a T.J. Maxx, Marshalls or HomeGoods branded retail store in the state of California during the Class Period."

(5) The Revised Settlement is preliminarily approved as fair, adequate, and reasonable pursuant to Federal Rule of Civil Procedure 23(e).

(6) For purposes of settlement, the Court appoints as Class Counsel Marcus J. Bradley and Kiley L. Grombacher of Bradley/Grombacher LLP; Shaun Setareh of the Setareh Law Group; Samuel A. Wong and Kashif Haque of the Aegis Law Firm, P.C.; Scott B. Cooper of the Cooper Law Firm; and Roger R. Carter of the Carter Law Firm.

(7) For purposes of settlement, the Court appoints Kimberly Roberts, Carneisha Forney, and Laurie Mullen as Class Representatives.

(8) Plaintiffs shall file their proposed third amended complaint no later than **August 10, 2017**.

(9) For purposes of settlement, the Court appoints ILYM Group, Inc. as Settlement Administrator to administer the Revised Settlement in the manner set forth in the Revised Settlement.

(10)     No later than 15 calendar days of this Order, Defendants shall transmit to the Settlement Administrator Class Information for each class member.

(11)     No later than 21 calendar days of receiving the Class Information, the Settlement Administrator shall mail the Notice of Settlement to all class members.

(12)     No later than 60 calendar days after the Notice Date (i.e., the Response Deadline), class members shall mail any requests for exclusion to the Settlement Administrator or any objections or comments to the Court.  As discussed at the hearing, class members

United States District Court
Northern District of California

shall mail their objections and comments to

> The Honorable Maria-Elena James
> *Roberts v. T.J. Maxx*, Case No. 13-cv-4731-MEJ
> 450 Golden Gate Avenue
> San Francisco, CA 94102

(13)   No later than **December 14, 2017**, Plaintiffs shall file a motion for final approval, attorneys' fees, and service awards.

(14)   The Court shall hold a final fairness hearing on **January 18, 2018 at 10:00 a.m**. in Courtroom B, 450 Golden Gate Avenue, San Francisco, California 94102.

**IT IS SO ORDERED.**

Dated: August 3, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge